### LOEB v. EASTMAN KODAK CO.

(Circuit Court of Appeals, Third Circuit. November 29, 1910.)

No. 1,389.

1. MONOPOLIES (§ 28*)—FEDERAL ANTI-TRUST ACT—ACTION FOR DAMAGES—INJURY TO CORPORATION—RIGHT OF STOCKHOLDER TO SUE.

Sherman Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), which provides that "any person who shall be injured in his business or property by any other person or corporation

*For other cases see same topic & § NUMBER·in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by reason of anything forbidden or declared to be unlawful by this act may sue therefor in any Circuit Court of the United States * * * and shall recover threefold the damages by him sustained," does not give a right of action to a stockholder or creditor of a corporation by reason of a combination or conspiracy alleged to have been in violation of the act and to have caused the bankruptcy of the corporation resulting in the loss of plaintiff's stock or debt; the right of action in such case being in the corporation or its trustee in bankruptcy.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. § 28.*]

**2.** PLEADING (§ 339*)—WITHDRAWAL OF PLEA TO FILE DEMURRER—DISCRETION OF COURT.

It is within the discretion of a federal court to permit a defendant to withdraw a plea and file a demurrer on such terms as to costs as it deems just.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1038; Dec. Dig. § 339.*]

**3.** PLEADING (§ 236*)—AMENDED PLEADINGS—DISCRETION OF COURT.

Granting or refusing leave to a plaintiff to file an amended statement of claim rests in the sound discretion of the court, and, where the application is to file an amended statement containing different counts as an entirety, the court may properly pass on it as an entirety.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 236.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action at law by S. S. Loeb against the Eastman Kodak Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Joseph A. Langfitt, H. W. McIntosh, and William Kaufman, for plaintiff in error.

William M. Robinson and David A. Reed (M. B. Philipp, Walter S. Hubbell, and Reed, Smith, Shaw & Beal, of counsel), for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. This action was instituted in the court below to recover treble damages under section 7 of the Sherman antitrust act, approved July 2, 1890, c. 647, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202). Section 7 is as follows:

"Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

The suit was commenced February 23, 1909, and a statement of claim filed on the same day. The pertinent parts of that claim are as follows:

"The said plaintiff claims damages from the said defendant in the sum of $45,505.80, upon a cause of action of which the following is a statement:

---

"At divers and various times and from time to time prior to the year 1902 and in the years 1902, 1903, 1904, and 1905, the defendant company entered into various contracts, combinations in the form of trusts and otherwise, and conspiracies in the restraint of interstate trade and commerce, with American Aristotype Company, Napera Chemical Company, Photo Materials Company, Blair Camera Company, American Camera Manufacturing Company, Kirkland Lithium Paper Company, Rochester Optical Company, Century Camera Company, Rochester Panoramic Camera Company, Seed Dry Plate Company, Standard Dry Plate Company, Stanley Dry Plate Company, and Tapprell & Loomis Company, and divers other persons, firms, and corporations to the plaintiff unknown, and by means of said contracts, combinations, and conspiracies the defendant attempted to monopolize, and did monopolize, the interstate trade and commerce in cameras, films, photographic dry plates, photographic papers, and all other sorts, kinds, and descriptions of photographic supplies. The said contracts, combinations, and conspiracies, and the monopoly thereby established, continued throughout and during the years 1902, 1903, 1904, and 1905, and still continue, and the said monopoly has become more complete and stronger from time to time as more and more of said illegal contracts, combinations, and conspiracies have been entered into.

"The Liberty Photo Supply Company was a corporation organized under the laws of the state of Pennsylvania, for the purpose of manufacturing and selling photographic supplies of all descriptions, including all of the articles which the said defendant was monopolizing, and attempting to monopolize as hereinabove set forth. The business of the said Liberty Photo Supply Company had been established by a partnership of the same name which was incorporated in or about June 27, 1902. Its place of business was No. 5907 Baum street, in the city of Pittsburgh, and was continued therein until January, 1906, when it was thrown into involuntary bankruptcy, upon petition filed by the said defendant, the said Rochester Optical Company, and the said Century Camera Company, at No. 3,121 in bankruptcy, in the United States District Court for the Western District of Pennsylvania, upon which petition it was duly adjudged a bankrupt, its property seized upon by a receiver appointed by said court, at the instance of said defendant and its co-petitioners, and sold at prices far below its real value. On distribution of the fund realized in said proceedings, only the costs of administration, state taxes, and about 29 per cent. of the wage claims were paid, leaving absolutely nothing for distribution to the balance of wage claims, rent, unsecured creditors and stockholders—all of which, upon reference to said bankruptcy proceedings, will fully and at large appear.

"Plaintiff was a stockholder in said Liberty Photo Supply Company on the date of filing of said petition in bankruptcy to the extent of 162 shares, par value $50 per share, and said stock was worth the full par value thereof prior to the completion by the defendant of the said illegal monopoly; plaintiff was also an unsecured creditor for moneys loaned and advanced by him to said bankrupt to the amount of $1,200. Plaintiff had also satisfied out of his own funds the rent claim against said bankrupt, amounting to $229, taking an assignment thereof from the claimants. Plaintiff had also satisfied out of his own funds the claim of John Nunlist for wages due from said bankrupt amounting to $81.50 and claim of Carrie Hartz, also for wages, due from said bankrupt, amounting to $80, and received in distribution on account of the former claim $15.80 and on account of the latter $11.71, thus sustaining a loss of $133.99 on these accounts. And plaintiff has also a claim for wages due to himself from said bankrupt amounting to $615.36, upon which he received $109.75, thus losing $505.61. And plaintiff was also injured and damaged in his personal credit and in divers other ways by reason of the bankruptcy and failure of said Liberty Photo Supply Company, to the amount of $5,000.

"Plaintiff further avers that the business of the Liberty Photo Supply Company was totally ruined and destroyed by the defendant, as the direct and immediate result of the illegal monopoly established by defendant in the said articles of interstate trade and commerce by reason of the said illegal contracts, combinations, and conspiracies."

The grievances of the plaintiff summarized were that the defendant, by means of its alleged illegal monopoly, had ruined the business of the Liberty Photo Supply Company, a corporation, in which the plaintiff was a stockholder, whereby the plaintiff suffered the total loss of his shares of stock therein; also, that he had claims against the company which for the same reason were rendered worthless and a total loss, and that he was further injured in his personal credit and in divers other ways "by reason of the bankruptcy and failure of the Liberty Photo Supply Company." Subsequently the defendant filed a plea of not guilty to the plaintiff's statement of claim. Numerous other steps and proceedings in the suit were thereafter had and taken, which it is unnecessary to set forth in detail. It is sufficient to say that the case proceeded so far upon the issues joined therein that an ex parte rule to take depositions had been entered by the plaintiff, and considerable testimony taken thereunder, when on December 10, 1909, the defendant presented a petition to the court in which the action was pending, asking leave to withdraw its plea of not guilty, and to file a demurrer to the statement of claim. The plaintiff demurred to this petition; but the demurrer was overruled, and subsequently, after argument upon the merits of the petition, the court granted its prayer and permitted the defendant to withdraw its plea, and file a demurrer upon terms, however, that the defendant should pay all costs incurred to the date of the order. It should be noted at this point that, before argument was had on the demurrer, the plaintiff on his part applied to the court for permission to file an amended statement of claim of the form then presented, and that argument was heard upon this application at the same time that it was heard upon the demurrer. Subsequently the court denied the application for leave to file the amended statement of claim, sustained the demurrer to the original statement, and entered judgment thereon in favor of the defendant.

The demurrer was based upon the following grounds:

"First. The statement of claim does not aver with reasonable certainty or definiteness any unlawful or tortious act on the part of the defendant.

"Second. The statement of claim does not show the nature of the alleged conspiracy or combination in restraint of trade.

"Third. The statement of claim shows no causal relation between the alleged unlawful or tortious acts of the defendant and the alleged injury suffered by the plaintiff.

"Fourth. The statement of claim shows that the cause of action, if any, on the allegations of the statement of claim, is in the Liberty Photo Supply Company or its trustee in bankruptcy, and not in the plaintiff.

"Fifth. The plaintiff has no standing, either as a stockholder, director, officer, employé, or creditor of the Liberty Photo Supply Company to maintain this action.

"Sixth. The injuries alleged to have been suffered by the plaintiff as stockholder, director, officer, employé, or creditor of the Liberty Photo Supply Company, or otherwise, are too remote, indirect, consequential, and uncertain to support an action against the defendant.

"Seventh. This action is a collateral attack upon the petition and adjudication in bankruptcy of the Liberty Photo Supply Company and the other proceedings in said action in bankruptcy.

"Eighth. The judgment in the bankruptcy proceedings mentioned in the statement of claim is conclusive against the plaintiff as to the existence of the allegations of the statement of claim and is conclusive against the plain-

tiff's claim that said petition was filed in pursuance of, or said adjudication in bankruptcy was obtained as a result of, a combination or conspiracy by this defendant.

"Ninth. The alleged wrongful acts of the defendant are presumed to have been set up in defense of said petition in bankruptcy, and that by the adjudication in that action the plaintiff is precluded from asserting them here."

The amended statement of claim which the plaintiff asked leave of the court to file sets forth the same cause of action as the original statement, but in a more precise and amplified form. Among other things, it alleges that there were additional persons, firms, and corporations with which the defendant had combined and conspired, in establishing the illegal monopoly complained of. It also amplified the methods whereby the defendant, in the exercise of its monopoly, injured and destroyed the business of the Liberty Photo Supply Company, and thereby injured the plaintiff. It further alleged that, in the schedules filed by the bankrupt company, there was exhibited a claim against the defendant which the trustee in bankruptcy never asserted by suit or otherwise, although requested by the plaintiff so to do; also, that the trustee had filed his final account, been discharged, and the bankruptcy case closed; that the bankrupt had ceased doing business since the date when the petition in bankruptcy was filed against it; and that it had no organization or assets and had never been discharged in bankruptcy. The proposed amended statement of claim also contained a new count setting up other damages alleged to have been directly sustained by the plaintiff through and by means of the illegal acts of the defendant. The gravamen of this count was that the plaintiff had been engaged in the year 1894, and prior thereto, in business as a photographer, and had continued therein to the present time; that in the prosecution of his said business he used large quantities of photographic materials manufactured, sold, and controlled by the defendant; that, by reason of its illegal monopoly therein, it controlled and raised the prices thereof and imposed thereon illegal and unreasonable terms of sale, whereby plaintiff was compelled to pay for such materials large sums of money in excess of the prices which he paid therefor prior to the establishment of said illegal monopoly, whereby, and as a direct result of such monopoly, he was damaged by the defendant to the amount of $1,000.

The main point in the case, however, is whether the plaintiff can recover for the loss of his stock in the Liberty Photo Supply Company, and of his claim as a creditor of that corporation, under section 7 of the Sherman anti-trust act.

The further point was raised in various forms by the demurrer that the statement of claim did not aver with reasonable certainty any illegal act of the defendant, or show the nature of the alleged conspiracy or combination in restraint of trade, or show any causal relation between the alleged illegal acts of the defendant and the injuries alleged to have been suffered by the plaintiff. In these respects the statement is open to serious criticism, even if it is not fatally defective, and the objections thus made would require careful consideration were it not for the view, unfavorable to the plaintiff, that we have taken of the main point, which we shall now proceed to consider.

A right of action is given, by section 7 of the statute above referred to, to "any person who shall be injured in his business or property, by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act." By a subsequent section the word "person" is declared to include a corporation. Admittedly the words of the statute are comprehensive. Prior to the statute, however, a stockholder in a corporation would have been without direct relief for an injury to his stock, through a wrong done to the corporation. The remedy for such an injury resided in the first instance, solely in the corporation. By means of such a suit it could have enforced the rights and redressed the wrongs of each of its stockholders. The statute above referred to was passed, as we must assume, with full knowledge of existing law in that respect. We have no reason to suppose, much less to assume, that it was intended thereby to run contrary to the settled policy of the law. Such an assumption would require us to believe that the act was intended, among other things, to multiply suits. Certainly it is not apparent that the act was intended to or did confer upon hundreds or thousands of stockholders individual rights of action when their wrongs could have been equally well and far more economically redressed by a single suit in the name of the corporation. Moreover, it is manifest that the plaintiff did not receive any direct injury from the alleged illegal acts of the defendant. No conspiracy or combination against him as a stockholder or creditor is alleged. The injury complained of was directed at the corporation, and not the individual stockholder. Hence any injury which he, as a stockholder, received was indirect, remote, and consequential. If a stockholder could successfully maintain such a suit, why not any creditor of the corporation? A creditor would apparently be injured in the same way and to the same extent as a stockholder, assuming that their interests were equal. Indeed, the claim demurred to assumes that both are equally injured, since the plaintiff sued not only for damages for alleged injuries to his rights as a stockholder, but also as a creditor of the Liberty Photo Supply Company.

There must exist some barrier which will effectually prevent such a multiplicity of suits as the plaintiff's position suggests, and we believe not only that that barrier exists, but that it is found now just where it was prior to the passage of the act in question. To illustrate, before bankruptcy a right of action, of the character in question, resided, as we have said, in the corporation, and subsequent to bankruptcy we think it equally clear that it resided in the trustee. It was suggested, however, on behalf of the plaintiff, that a trustee in bankruptcy could not institute such an action, nor could a suit in equity be maintained under the Sherman act. The answer is obvious even if we assume that a suit of the suggested character could not be maintained in equity. The stockholder could certainly apply to the court to have the trustee instructed to bring the action, and the court could require it to be brought, or it could permit the stockholder to sue in the name of the trustee upon indemnifying the estate against the costs of the suit. Moreover, it appears that the plaintiff herein evidently thought that the trustee could maintain the action, for in his proposed

amended statement of claim he alleges that he requested the trustee to bring such a suit. We think the statement of claim demurred to is bad, in that it did not, under the circumstances, set forth a cause of action in the plaintiff. This view is in accordance with that taken by Judge Brown, in Ames v. American Telephone & Telegraph Company (C. C.) 166 Fed. 820, which likewise arose upon demurrer. The principles laid down in that case are sound, and the clear and able reasoning of Judge Brown is well supported by the authorities cited, to which others might be added upon some of the points, were it necessary.

It is claimed, however, that the Circuit Court erred in allowing the defendant to withdraw its plea and file a demurrer, likewise in denying the plaintiff's application to rescind such permission after it had been granted. This was a matter which rested entirely in the sound discretion of the court, and under the circumstances of the case we think that it was not only permissible, but proper, to grant such leave. When the plaintiff's statement of claim was first brought to the attention of the court, if it appeared that the plaintiff had misconceived his rights, and that he had no cause of action, it would seem that the interests of the parties and the speedy administration of justice were alike furthered by permitting the question to be raised and decided at once, thereby saving costs and expense to the parties. The action of the learned judge in the premises should be commended rather than censured. Had the case been permitted to go to trial, the same result would, in our judgment, have ultimately been attained.

In Baltimore & O. R. Co. v. Camp, 81 Fed. 807, 26 C. C. A. 626, and Deakins v. Lee, Fed. Cas. No. 3,697, answers were permitted to be withdrawn and demurrers filed, and in Eberle v. Moore et al., 65 U. S. 147, 16 L. Ed. 612, the court below was sustained in granting permission to the defendant to withdraw a plea in bar and file a plea in abatement. In Spencer v. Lapsley, 20 How. 264, 15 L. Ed. 902, the Circuit Court, on the other hand, had denied an application by a defendant to withdraw his plea in bar and file a plea in abatement. The Supreme Court upheld the ruling below and said:

"This court has decided that such applications are addressed to the judicial discretion of the inferior court, and its decision is not open for revision here. It has decided that the refusal of an inferior court to allow a plea to be amended, or a new plea to be filed, or to grant a new trial or a continuance, or to reinstate a cause which has been legally dismissed, cannot be questioned for error in this court. Marine Ins. Co. of Alexandria v. Hodgson, 6 Cranch, 206 [3 L. Ed. 200]; Simms v. Hundley, 6 How. 1 [12 L. Ed. 319]."

The only remaining assignment of error which requires consideration alleges that the Circuit Court erred in refusing the motion to amend the plaintiff's statement of claim and in sustaining the demurrer. This assignment is not strictly in form, since it alleges two distinct and independent grounds of error, but, waiving that, we proceed to consider the only question not already considered as to whether the court erred in refusing permission to the plaintiff to amend its statement of claim. We think it did not. The propriety of allowing the amendment in this instance also rested in the sound discretion of the

court, and, in the form in which the application was presented, the judge could not have done otherwise than he did. The proposed statement of claim contained two counts, one of which merely restated in a more amplified and specific form the matters contained in the original claim. Such modifications as were made therein did not cure the vice of the original statement, since, as amended, it did not set forth a valid cause of action in the plaintiff. The amended statement, so far as the count of which we are speaking is concerned, would have been as open to demurrer as the original. It is true that the amended statement proposed to insert a new count of the character hereinabove indicated; but no application was made to the court for leave to file this count by itself, so that the court was not obliged to pass upon its sufficiency. The application was made to file both counts as an entirety, and the application could properly be refused or granted as an entirety.

Furthermore, it should be noted that the amplified and amended original count related to indirect and consequential injuries alleged to have been sustained by the plaintiff as a stockholder through the illegal combinations and conspiracies of the defendant, while the new or additional count pertained to certain direct injuries alleged to have been sustained by the plaintiff in his own business; hence it was intended to, and did, set up a new and independent cause of action. Furthermore, the refusal of the judge to allow its introduction into the statement of claim did not substantially injure the plaintiff, since there was nothing, after the demurrer was sustained, to prevent the plaintiff from instituting a new action upon the injury alleged to have been directly sustained by him in his own business. Under the circumstances, the court did not abuse its discretion.

Upon the whole case, we think the judgment below was right, and that it should be affirmed, with costs.