**KARSEAL CORPORATION, Appellant,**

v.

**RICHFIELD OIL CORPORATION,**
Appellee.

No. 13856.

United States Court of Appeals
Ninth Circuit.

April 7, 1955.

Vaughan, Brandlin & Wehrle, Thomas G. Baggot, Los Angeles, Cal., for appellant.

William J. DeMartini, Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

This case arises on the pleadings before trial, involves an action for treble damages based on §§ 3 and 4 of the Clayton Act, Act of Oct. 15, 1914, 38 Stat. 731, 15 U.S.C.A. §§ 14 and 15, and § 1 of the Sherman Anti-Trust Act, Act of July 2, 1890, 26 Stat. 209, 15 U.S.C.A. § 1, and is an aftermath of the government's civil antitrust action against Richfield Oil Corporation, (United States v. Richfield Oil Corporation), D.C.S.D.Cal.1951, 99 F.Supp. 280, affirmed per curiam in Richfield Oil Corporation v. United States, 1952, 343 U.S. 922, 72 S.Ct. 665, 96 L.Ed. 1334, hereafter called the Richfield case.

The case presents the sole question as to whether the amended complaint states a cause of action [1] and therefore whether the motion to dismiss was properly granted by the trial judge. Directly involved is the scope of the "target area" of a defendant's antitrust violation, in an antitrust suit for treble damages.

The amended complaint is based essentially on the Richfield case and in summary alleges:—

Karseal is a California corporation engaged in the business of manufacturing and selling in interstate commerce an automobile polish known as, and by its trade name of "Wax Seal." Karseal sells "Wax Seal" outright to various independent distributors geographically enfranchised by Karseal, each of whom in turn re-sells "Wax Seal" to various independent service station operators located within their respective territories, from whom the public purchases "Wax Seal" at retail.

Richfield is a Delaware corporation whose general offices and principal place of business is in the city of Los Angeles, State of California. Richfield is primarily engaged in the business of producing, refining, transporting and marketing petroleum and petroleum products. In connection therewith Richfield sponsors certain automotive accessories not produced by Richfield, but sold and distributed at service stations, which selling and distribution is handled by, or arranged for at said stations by Richfield. Automotive accessories are parts and articles other than petroleum products used in the servicing or repair of automotive vehicles and *include among other items automobile waxes and polishes*. Richfield sponsors various automobile waxes and polishes other than "Wax Seal" and such other polishes are produced by parties other than Karseal.

The amended complaint alleges that Richfield has violated Section 1 of the Sherman Anti-Trust Act, and Section 3 of the Clayton Act, in that Richfield has executed, entered into and operated under various contracts consisting of written and oral agreements and understandings between itself and independent service station operators which are in unreasonable restraint of, and substantially lessen competition in, interstate trade in automotive accessories. The written agreements between Richfield and the independent service station operators generally referred to as "exclusive dealing contracts," dealt with at length in the Richfield case, are then summarized and described in the amended complaint.

The amended complaint alleges that sales of automotive accessories constitute a substantial volume of the business done at the above described service stations. It describes how orders for sponsored automotive accessories, including automobile waxes and polishes, are generally placed with the manufacturer thereof by Richfield, or by a so-called TBA distributor, and thereafter handled,—all as described in the Richfield case.

The amended complaint alleges that by means of the aforesaid written and

---

1. Rule 8(a), Fed.Rules Civ.Proc. 28 U.S.C.A., uses the words "a claim for relief." " * * * the plaintiff must plead a legal right and its violation,—which is what has always been denominated as a 'cause of action.'" Sidebotham v. Robison, 9 Cir., 1954, 216 F.2d 816, 831, cases collected.

oral agreements and understandings Richfield has limited and restricted the purchase of petroleum products and automotive accessories by said independent operators to only those products specifically designated by Richfield for retail handling at the approximately 2965 stations involved herein; that the aforesaid written and oral contracts, agreements and understandings, and Richfield's actions in enforcing the same throughout the states of California, Washington, Oregon, Nevada, Arizona and Idaho, have damaged the general public in the following ways:

1. By preventing and eliminating competition between Richfield and other producers of similar petroleum products;

2. By preventing and eliminating competition between manufacturers of automotive accessories sponsored by Richfield and other manufacturers of similar automotive accessories;

3. By depriving said independent service station operators of their opportunity to purchase petroleum products and automotive accessories of their own selection and in competition with those produced or sponsored by Richfield;

4. By depriving said independent operators of their opportunity to purchase petroleum products and automotive accessories at prices determined by free and open competition and according to reasonable and competitive terms and conditions of sale and of obtaining the benefit of direct factory purchase discounts in those cases where the volume of purchases by an operator would justify such discounts;

5. By securing to Richfield a monopoly in and control over the sale of all petroleum products and automotive accessories sold at the service stations involved herein;

6. By restraining and substantially lessening competition in interstate trade and commerce in petroleum products and automotive accessories.

The amended complaint then describes the decree in the trial court on August 3, 1951 in the Richfield case, which decree provides that Richfield has:

1. Entered into contracts consisting of written and oral agreements and understandings which unreasonably restrain interstate trade and commerce in petroleum products and automotive accessories in violation of Section 1 of the Act of Congress of July 2, 1890, as amended, 26 Stat. 209, 15 U.S.C.A. § 1, commonly known as the Sherman Act, and

2. Entered into contracts consisting of written and oral agreements and understandings, the effect of which has been to substantially lessen competition and tend to create a monopoly in the sale and distribution of petroleum products and automotive accessories, in violation of Section 3 of the Act of Congress of October 15, 1914, as amended, 38 Stat. 731, 15 U.S.C.A. § 14, commonly known as the Clayton Act. The said judgment is now final.

The amended complaint then alleges proximate cause and damage to Karseal as follows: "As a direct and proximate result of defendant's acts in violation of law as aforesaid, said enfranchised distributors and their salesmen, in spite of numerous diligent and continued attempts, have not been able except in isolated instances, for the period July 1947 to the present time, to sell 'Wax Seal' to independent dealers operating retail outlets under an L–O, 3–C or 337 type of arrangement" (the three types of service station agreements) "with the direct and proximate result that said distributors' need of and demand for 'Wax Seal' was and has been substantially diminished, with the direct and proximate result that plaintiff's sales of 'Wax Seal' to said distributors were and have been substantially diminished with the direct and proximate result that plaintiff has sustained damage to its business and property in the amount of $135,000 which is the amount of net profits that plaintiff would have realized on the sales to said distributors so prevented by defendant's acts in violation of law, as aforesaid."

The amended complaint prays for treble damages, to-wit, $405,000.[2]

Section 4 of the Clayton Act, Act of Oct. 15, 1914, c. 323, § 4, 15 U.S.C.A. § 15, provides:

"Suits by persons injured; amount of recovery.

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

The precise question presented is whether Karseal's business and wax product is "within that area of the economy which is endangered by a break-down of competitive conditions in a particular industry." Conference of Studio Unions v. Loew's Inc., 9 Cir., 1951, 193 F.2d 51. Or in other words, was Karseal within the "target area" of Richfield's illegal practices, determined in the Richfield case? Assuming Karseal was "hit" by the effect of the Richfield antitrust violations, was Karseal "aimed at" with enough precision to entitle it to maintain a treble damage suit under the Clayton Act?

The action is brought by Karseal, who it is alleged, was the manufacturer of a wax, selling to independent distributors, who in turn were prevented or impeded in selling it to the 2965 independent Richfield service stations by reason of Richfield's illegal practices in violation of the antitrust laws. No cause of action is presented in behalf of the independent distributors of Karseal wax. None are parties plaintiff.

■ Since this appeal arises from the granting of a motion to dismiss, we must take as true all the facts which are well pleaded in the amended complaint.[3] Richfield concedes that damage and proximate cause may be pleaded generally. Such is the law. C. E. Stevens Co. v. Foster & Kleiser Co., 1940, 311 U.S. 255, 261, 61 S.Ct. 210, 85 L.Ed. 173; Louisiana Farmers' Protective Union, Inc., v. Great Atlantic & Pacific Tea Co., etc., 8 Cir., 1942, 131 F.2d 419, 422. Karseal has so alleged and our problem is whether the facts as alleged show the necessary causal relationship. Richfield relies on an absence of proximate cause and directness of injury from the facts pleaded. In a private antitrust suit, the plaintiff must not only allege a violation of the antitrust laws, but damage to the plaintiff proximately resulting from the acts and conduct which constitute the violation. Feddersen Motors v. Ward, 10 Cir., 1950, 180 F.2d 519, 522; Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 1945, 148 F.2d 580, 582, certiorari denied 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437; Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 1943, 138 F.2d 967, certiorari denied 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 1934, 72 F.2d 885, 887; Myers v. Shell Oil Co., D.C.S.D.Cal.1951, 96 F.Supp. 670, 674.

---

2. The trial court filed a memorandum (unpublished) on sustaining a motion to dismiss the original complaint but granted leave to file the amended complaint, here considered. Upon sustaining a motion to dismiss the amended complaint, the trial court adopted its memorandum previously filed when the original complaint was struck down.

3. How plaintiff may prove its damage, and the difficulties it may encounter are not now before us. The cases relied on in the trial judge's memorandum:—Keogh v. Chicago & N. W. Railway Co., 1922, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; Turner Glass Corp. v. Hartford-Empire Co., 7 Cir., 1949, 173 F.2d 49, and Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 1943, 138 F.2d 967,—stand for the rule that in actions brought under Section 4 of the Clayton Act, plaintiff's damages must be *proved* by facts from which their existence is logically and legally inferable and cannot be supplied by conjecture. But see Bigelow v. RKO Radio Pictures, Inc., 1946, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652.

The treble damage action is one for a tort and punitive and compensatory damage is the relief granted. "Under the Clayton Act the right is not confined to persons in privity with the wrongdoer, but is given to anyone who has suffered injury to his business or property by reason of the wrongful acts." Clark Oil Co. v. Phillips Petroleum Co., supra, 148 F.2d at pages 582-583. Vines v. General Outdoor Advertising Co., 2 Cir., 1948, 171 F.2d 487, 491.[4]

Turning now to the cases concerning the "target area" or proximate causation, the rule is that one who is only *incidentally* injured by a violation of the antitrust laws,—the bystander who was hit but not aimed at,—cannot recover against the violator. Loeb v. Eastman Kodak Co., 3 Cir., 1910, 183 F. 704; Gerli v. Silk Ass'n of America, D.C.S.D.N.Y. 1929, 36 F.2d 959; Corey v. Boston Ice Co., D.C.Mass.1913, 207 F. 465; Conference of Studio Unions v. Loew's Inc., supra.

In accordance with the foregoing rule, directness of injury was held lacking in suits by (a) *shareholders*, United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 1916, 232 F. 574; Loeb v. Eastman Kodak Co., supra; Gerli v. Silk Ass'n of America, supra; (b) *officers of corporations*, Corey v. Boston Ice Co., supra; (c) *creditors*, Loeb v. Eastman Kodak Co., supra; and (d) *landlords*, Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.S.D.N.Y.1939, 30 F.Supp. 389, affirmed 2 Cir., 1940, 113 F.2d 114; United Copper Securities Co. v. Amalgamated Copper Co., supra.

Seaboard Terminal Corp. et al. v. Standard Oil Company of New Jersey, [S.D.N.Y.1936], unpublished, except in CCH Trade Reg. Service, Par. 29013, relied on heavily by Richfield, seems to come clearly within the above rule. The allegations of the complaint showed that the conspiracy was *directed* against the Midland Corporation, a wholly owned subsidiary of Seaboard corporation. Sea-board claims it lost profits it otherwise would have made, had Midland continued in business. The complaint for treble damages was dismissed as to Seaboard. The authority does not control the case.

This Circuit has squarely stated the rule, and its reverse side, in *Conference of Studio Unions v. Loew's Inc.*, supra, 193 F.2d at page 54:

" * * * A conspiracy may have many purposes and objects; the conspirators may perform an almost infinite variety of acts in furtherance of the conspiracy; but, in order to state a cause of action under the anti-trust laws a plaintiff must show more than that one purpose of the conspiracy was a restraint of trade and that an act has been committed which harms him. He must show that he is within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry. Otherwise he is not injured 'by reason' of anything forbidden in the anti-trust laws.

"Such a construction is in accordance with the basic and underlying purposes of the anti-trust laws to preserve competition and to protect the consumer. Recovery and damages under the anti-trust law is available to those who have been directly injured by the lessening of competition and withheld from those who seek the windfall of treble damages because of incidental harm."

The Conference case, supra, refers to the cases cited above concerning incidental damages and states, at page 54:

"Not one of the acts alleged to have caused injury to the appellants", (in the Conference case), "effectuated or tended to create a restraint on commercial competition in the motion picture industry." And earlier, on page 54, stated, "The appellants' connection with the alleged illegal conspiracy is not such

---

4. See additional cases cited in note 6 of the Vines case.

as would bring them within the contemplation of the anti-trust law. The entire import of the alleged conspiracy, insofar as competitive conditions are concerned, is the attempt to destroy the Independents."

With these authorities in mind, Richfield argues that we have a situation where "a restraint of trade has been impressed upon individual service station dealers * * * One step removed is the distributor of Appellant who would sell these dealers a competitive product * * * the exclusive dealing practices of Appellee herein (Richfield) were not aimed at the distributors of Appellant" (Karseal); and further argues that the practices were not aimed at the manufacturer (Karseal).

The findings, conclusions of law and final judgment in the Richfield case are attached as exhibits to the amended complaint and made a part thereof by reference. Therein the trial court concluded that these exclusive dealer practices and agreements "have had the necessary and intended effect of denying *manufacturers* and suppliers of * * * automotive accessories, competitive to those manufactured or sponsored by Richfield, access to a substantial number of potential outlets * * *" [5] [emphasis added]. The restraint found by the trial court was in commerce in "petroleum products and automobile accessories."

■ The judgment of this prior equity proceeding, the Richfield case, would be *prima facie* evidence against Richfield at a trial of this action. Sec. 5, Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 16. Emich Motors Corp. v. General Motors Corp., 1951, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534. At such trial the findings of fact in the prior government equity proceeding would be used by the trial judge in carrying out the mandate of the Supreme Court in Emich Motors Corp. v. General Motors Corp., supra, that the trial judge should (a) examine the record of the prior government suit and determine the issues decided therein; (b) instruct the jury regarding the issues of the prior government suit; and (c) explain the scope and effect of the government judgment upon the case on trial. It is of course the Richfield case that Karseal relies on to make out, in part, its cause of action herein.

■ Giving full value to the allegations of the amended complaint (as we must) what was Richfield's violation? It applied the illegal restraint at the level of the independent service stations. The restraint was directed against the particular products, in their finished form (including Karseal's wax), described in the findings, conclusions and decree of the Richfield case, and not against raw materials or component parts of the products.

Primarily the operation and effect of the illegal practices was on the products (including Karseal's wax) which were competitive to the Richfield sponsored products. The impact was on the market. The gist of the violation was the prevention or impeding of the sale of these competitive products. Logically, and as found in the findings and conclusions of the trial judge in the Richfield case, the illegal acts were directed against the manufacturers and distributors of the competing products, including Karseal's wax. Such persons and such products were the "target" of the illegal practices.

■ Apparently, Richfield's argument is in part, that the independent distributors of Karseal's Wax might have a cause of action, but that Karseal is once removed from the distributors and therefore may not sue. We need not pass on whether such distributors have a cause of action. But it would appear that both the manufacturer and the independent distributor have such a cause of action. Statutes constitutional on their face must be constitutionally applied. Classes or categories effected by a statute must rest on a realistic basis. To say to a

---

5. We have quoted from a conclusion of law in the interest of brevity. The findings of fact are to the same effect but more extensive.

manufacturer of wax that he may have the protection of the antitrust laws in private litigation if he hires salesmen for his product, and not have such protection if he decides to contract with a distributor, would appear to be an unequal application of the law and unjustified dictation as to how he operated his business. We are required to interpret congressional enactments in a manner consistent with their constitutionality, if possible. An interpretation which would read into the statute an unjustifiable restriction as to persons authorized to bring the action might call for invalidation of the statute. The language of the statute does not warrant such restrictive interpretation. The Congress in the Clayton Act, stated in Sec. 4, *"Any person who shall be injured * * * may sue * * *"* [emphasis added]. The Congress did not attempt to limit the relief to those manufacturing or distributing.

Free enterprise is a basic concept of our economy but contained therein is the corollary of free and fair competition. The broad scope of the antitrust laws, was part of the legislative scheme "intended in the most comprehensive way to provide against combinations or conspiracies in restraint of trade or commerce * * *", D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 1915, 236 U.S. 165, 173, 35 S.Ct. 398, 401, 59 L.Ed. 520, and thus gave substance to those basic concepts and corollaries. The Clayton Act was part of the overall plan and the "right of the injured party to recover damages was intended to provoke greater respect for the Act * * *", Maltz v. Sax, 7 Cir., 1943, 134 F.2d 2, 5,

certiorari denied 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720. "The treble-damage action was intended not merely to redress injury to an individual through the prohibited practices, but to aid in achieving the broad social object of the statute." Fanchon & Marco v. Paramount Pictures, D.C.S.D.Cal.1951, 100 F. Supp. 84, 88, affirmed Fanchon & Marco, Inc., v. Paramount Pictures Inc., 9 Cir., 1954, 215 F.2d 167, certiorari denied 348 U.S. 912, 75 S.Ct. 293. The object of the three main statutes, Sherman, Clayton and Robinson-Patman Acts, 15 U.S. C.A. § 1 et seq., comprising the antitrust laws, "is to protect 'the interstate market'", Balian Ice Cream Co. v. Arden Farms Co., D.C.S.D.Cal.1950, 94 F.Supp. 796, 800.[6]

The Richfield case found the effect of the illegal practices as alleged herein, on the interstate market. The treble damage action is a sanction allowed to a private litigant, because of the public interest. Such litigant must of course show he was proximately and not incidentally damaged, by the illegal practices. Considering the purposes of the antitrust laws, the manufacturer, Karseal, has stated a case.

We conclude that Karseal under the alleged facts of this case is "within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry." Conference case, supra; that Karseal was within the target area of the illegal practices of Richfield; that Karseal was not only hit, but was aimed at, by Richfield.

The judgment is reversed and remanded with direction to overrule the motion to dismiss

6. See discussion pages 800–801. The reported case concerned a motion to dismiss and it was held a cause of action was stated. The case, on the trial, based essentially on the Robinson-Patman Act, resulted in judgment for defendants and is now on appeal.