Herb WILSON, Henry Schriner and Donald Lappin, for themselves and for all employees of Ringsby Truck Lines, Inc., who are similarly situated, Plaintiffs,

v.

RINGSBY TRUCK LINES, INC., a Nebraska corporation, Defendant.

Civ. A. C-2619.

United States District Court,
D. Colorado.

Dec. 21, 1970.

· John A. Criswell, Englewood, Colo., for plaintiffs.

John F. Mueller, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Defendant Ringsby Truck Lines is a common carrier which transports goods in Colorado and Wyoming. Plaintiffs are Ringsby employees who work as truck drivers and warehousemen. Plaintiffs allege, on behalf of themselves and all others similarly situated, that they have been and continue to be injured by conduct on the part of Ringsby which violates the Sherman Anti-Trust Act, 15 U.S.C. § 1 (1964). It is alleged that Ringsby and other common carriers have entered into an agreement to divide up and control their business between certain points in Colorado and Wyoming, and that, as a result, Ringsby has discontinued some of its former business. Plaintiffs assert that due to this loss of business they have suffered reductions in wages and other compensation. They seek injunctive relief and damages pursuant to 15 U.S.C. § 15 (1964) and 49 U.S.C. § 8 (1964).

Defendant has moved to dismiss the complaint on three grounds: plaintiffs lack standing to sue because they are not persons injured within the meaning of 15 U.S.C. § 15 (1964); plaintiffs have failed to allege, as required by section 15, that the public has been injured by Ringsby's conduct; and the complaint fails to state a claim for injunctive relief. For the reasons stated below, defendant's motion will be denied.

## I.

We must confess at the outset that we find antitrust standing cases more than a little confusing and certainly beyond our powers of reconciliation. The statutory provision about which there exists so much uncertainty itself seems straightforward:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in any district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. 15 U.S.C. § 15

This language suggests that to bring a private action for violation of the antitrust laws a litigant need only allege that he has been injured, or is threatened with injury, by conduct which violates an antitrust law. However, because a treble damages award can be a severe penalty for a defendant and a "windfall" for a plaintiff, numerous federal courts have developed rules designed to limit the classes of plaintiffs which can assert an antitrust violation. For example, some courts have interpreted section 15 to require that the plaintiff be a person against whom the illegal conduct is directed. SCM Corp. v. RCA, 407 F.2d 166 (2d Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L. Ed.2d 461 (1969); Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2d Cir. 1955), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956); Loeb v. Eastman Kodak Co., 183 F. 704 (3d Cir. 1910). This requirement is sometimes said to mean that the plaintiff's injury must be "directly," rather than "remotely," caused by the violation of which plaintiff complains. Nationwide Auto Appraiser Service v. Association of Casualty & Surety Companies, 382 F.2d 925, 927, 929 (10th Cir. 1967). Other courts have adopted the somewhat different rule that a private party has standing when he is "within the sector of the economy in which the violation threaten[s] a breakdown" and is injured by the violation. South Carolina Council of Milk Producers, Inc. v. Newton, 360 F.2d 414 (4th Cir.), cert. denied, 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966); Karseal Corp. v. Richfield Oil Corp., 221 F. 2d 358 (9th Cir. 1955); Conference of Studio Unions v. Loew's, Inc., 193 F.2d 51 (9th Cir. 1951), cert. denied, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952). This requirement is sometimes described as meaning that the plaintiff must be within the "target area" at which the illegal practices are directed. *Karseal Corp., supra*, 221 F.2d at 362.

The decision of our own tenth circuit court of appeals in *Nationwide Auto, supra*, may at first glance appear to support defendant's position. In that case the appellee association of insurance companies was charged with attempting to eliminate competition in the business of automobile appraising by "sponsoring" a single appraiser in a particular area and referring business exclusively to that person. Plaintiff insurance company, which sold territorial franchises to appraisers located in the same areas, claimed that it had been injured by the alleged antitrust violations because the profits from its franchises had been diminished. The tenth circuit affirmed the trial court's order granting summary judgment on the ground that the injuries allegedly suffered by plaintiffs, the dissolved insurance company and its liquidating trustees, were indirect and remote and therefore plaintiffs lacked standing to sue. Plaintiffs in this action do not allege that Ringsby's supposed antitrust violations are directed at the company's employees. On the contrary, plaintiffs specifically claim that defendant's conduct is intended to divide up and control the common carrier business between certain points in Colorado and Wyoming and is directed against actual or potential competitors. It may therefore be argued that the injuries

which plaintiffs have allegedly suffered are even less direct than the injuries at issue in *Nationwide Auto*.

On the other hand, the tenth circuit was careful not to state that a plaintiff in a private antitrust action must be a competitor of the defendant. To our knowledge no court has adopted such a restrictive view of section 15. The court's analysis in *Nationwide Auto* suggests that what renders an injury remote is the absence of a special relationship between the parties. The court stated:

> The plaintiff seller of franchises is thus separated to such an extent from its franchise holder, despite the royalty-percentage of business connection, that its damages resulting from the acts of defendants would come about "indirectly," "remotely," or as "derivative damages." There is no product competition, *no meeting of the landlord-tenant standard*; but instead the relationship more nearly approaches the supplier cases, the licensee arrangements, or the union membership cases. *Nationwide Auto, supra*, 382 F.2d at 929 (emphasis added).

We are not entirely certain what the tenth circuit meant by the italicized phrase, but its language certainly suggests that the relationship between landlord and tenant in the theater cases, referred to earlier in the opinion, can itself supply a basis for standing. It has been held that the lessor of a motion picture theater has standing to complain that his lessee is engaged in conduct which is forbidden by the antitrust laws and which reduces the lessor's percentage of gross receipts. *E. g.*, Congress Building Corp. v. Loew's, Inc., 246 F.2d 587 (7th Cir. 1957); *contra*, Melrose Realty Co. v. Loew's, Inc., 234 F.2d 518 (3d Cir.), cert. denied, 352 U.S. 890, 77 S.Ct. 128, 1 L.Ed.2d 85 (1956); *see also* Steiner v. Twentieth Century-Fox Film Corp., 232 F.2d 190 (9th Cir. 1956); *see generally* Note, Standing to Sue for Treble Damages Under Section 4 of the Clayton Act, 1964 Colum.L.Rev. 570, 583. The contractual relationship between employer and employee is strikingly similar to that between landlord and tenant, and, since it is alleged that defendant Ringsby is engaged in, and not merely the victim of, the supposed antitrust violation, we believe that the court of appeals would view the injuries sustained as direct rather than derivative.

Two other considerations persuade us that plaintiffs should be permitted to bring this action. The first is that loss of employment opportunities to a sales agent or supervisor has been held to be an injury to "business or property" within the meaning of section 15 and of sufficient directness to permit the injured party to maintain an action. *E. g.*, Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5th Cir. 1967); Nichols v. Spencer International Press, Inc., 371 F.2d 332 (7th Cir. 1967); Vines v. General Outdoor Advertising Co., 171 F.2d 487 (2d Cir. 1948); Roseland v. Phister Manufacturing Co., 125 F.2d 417 (7th Cir. 1942). The tenth circuit in *Nationwide Auto*, while it discussed numerous other federal court decisions, did not mention any of these cases and we think it unlikely that the opinion can be considered dispositive of the issue now before us or that the court of appeals so intended.

Furthermore, we have some doubt that either the "direct injury" or "target area" approach to standing is a correct interpretation of 15 U.S.C. § 15. Both rules appear to be based on the theory that the sole purposes of antitrust legislation are to preserve competition and protect the consumer, and, therefore, to have a standing a private litigant other than a consumer must at least show a close relationship with that sector of the economy threatened by an antitrust violation. *See, e. g.*, Conference of Studio Unions v. Loew's, *supra*, 193 F.2d at 54–55. This theory, while obviously not incorrect, may nevertheless be incomplete. To permit any person injured by an antitrust violation to bring a private action would surely promote both the punitive and remedial aims of antitrust legislation. It may also be

argued that the purpose and language of this legislation are so sweeping that any person injured by the proscribed conduct should be considered within the class which Congress intended to protect. Note, *supra*, at 587. Even if the theory be correct that the purposes of the Sherman Act are to preserve competition and protect the consumer, it does not necessarily follow that the restricted classes of persons mentioned above are the only ones, in addition to the United States, empowered to enforce the Act. The best evidence of what Congress intended ought to be the language of section 15 itself, and, as we have already noted, that section does not contain either a "direct injury" or a "target area" limitation upon standing. In addition, the Supreme Court's holding in Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957), indicates that we should take an unrestrictive view of section 15. There the court permitted Radovich, a football player who had been black-listed by the National Football League, to complain that the league had conspired to monopolize and control professional football in violation of the Sherman Act. The court did not specifically discuss whether Radovich had been "directly injured" or was within the "target area" the conduct was aimed at, but the fact remains that these terms are ill-suited for describing Radovich's position. The National League's conduct was really directed at rival football leagues such as the All-America Conference. Radovich and his fellow players were simply victims of that conduct who had been treated much like property. Concerning the sufficiency of Radovich's complaint, the Supreme Court stated:

> Petitioner's complaint need only be "tested under the Sherman Act's general prohibition on unreasonable restraints of trade," and meet the requirement that petitioner has thereby suffered injury. Congress has, by legislative fiat, determined that such prohibited activities are injurious to the public and has provided sanctions

allowing private enforcement of the antitrust laws by an aggrieved party. These laws protect the victims of the forbidden practices as well as the public. Congress itself has placed the private antitrust litigant in a most favorable position through the enactment of § 5 of the Clayton Act. In the face of such a policy this Court should not add requirements to burden the private litigant beyond what is specifically set forth by Congress in those laws. 352 U.S. at 453–454, 77 S.Ct. at 395 (footnotes and citations omitted).

This paragraph suggests to us that the Supreme Court would not take a restrictive view of section 15, and we do not believe that the tenth circuit court of appeals would do so on the facts of this case.

## II.

■ Defendant further contends that plaintiffs' complaint fails to state a cause of action because it does not allege that the "public interest" has been damaged by the alleged antitrust violation. In support of its theory that 15 U.S.C. § 15 requires such an allegation, defendant cites numerous federal court decisions, including Feddersen Motors, Inc. v. Ward, 180 F.2d 519 (10th Cir. 1950). It is true that a decade ago there was some confusion on this point, but the Supreme Court has since made clear that allegation and proof of public injury are unnecessary. In re McConnell, 370 U.S. 230, 231, 82 S.Ct. 1288, 8 L. Ed.2d 434 (1962); Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U. S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). As Mr. Justice Black stated, writing for the majority in *Radiant Burners, supra*, 364 U.S. at 660, 81 S.Ct. at 367:

> By § 1, Congress has made illegal: "Every contract, combination * * * or conspiracy, in restraint of commerce among the several States * * *." Congress having thus de-

scribed the criteria of the prohibitions, the courts may not expand them. Therefore, to state a claim upon which relief may be granted under that section, allegations adequate to show a violation and, in a private treble damages action, that plaintiff was damaged thereby are all the law requires. (Citation omitted.) Defendant has not urged that plaintiffs' allegations are insufficient to state a section 1 violation.

## III.

■ Finally, defendant argues that the complaint should be dismissed on the ground that injunctive relief may not be had against defendant common carrier. Since plaintiffs also seek damages, defendant's contention, even if true, would provide no ground for dismissing the complaint. Whether the injunctive relief sought here may be granted and would be appropriate are matters yet to be decided. We intimate no view on this.

For the foregoing reasons it is

Ordered that defendant's motion to dismiss the complaint in the instant action be and the same hereby is denied.