Kenneth L. HARRIS, Plaintiff,

v.

SHELL OIL COMPANY, a corporation,
Defendant.

Civ. A. No. 4021-N.

United States District Court,
M. D. Alabama, N. D.

Feb. 25, 1974.

Albert P. Brewer, Robison, Belser, Brewer & Phelps, Montgomery, Ala., for plaintiff.

William Simon, John S. Kingdon, G. Joseph King, Howrey, Simon, Baker & Murchison, Washington, D. C., and by William Linne, Steiner, Crum & Baker, Robert E. Steiner, III, Montgomery, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

VARNER, District Judge.

This cause is submitted to the Court on the Plaintiff's two motions to amend his complaint, the Plaintiff's motion to amend answers to the counterclaims filed by the Defendant, the Defendant's motion for summary judgment on the complaint and answer, and the Defendant's motion for summary judgment on Counterclaims No. 2, 3, and 4. The parties have briefed and orally argued the issues thereunto pertaining.

This Court is of the opinion as follows:

1. That the Plaintiff's motions to amend his complaint should be denied as such amendments would not and could not, under the admitted facts in this case, state any basis for recovery by the Plaintiff;

2. That the Plaintiff's motion to amend his answers to the Defendant's counterclaims should be allowed;

3. That the Defendant's motion for summary judgment on the complaint and answer should be granted on the authority of Martens v. Barrett, 5th Cir., 245 F.2d 844; and

4. That the Defendant's motion for summary judgment on the counterclaims should be denied.

The facts material to the above motions are as follows: For many years prior to November 30, 1971, Plaintiff operated an oil business under the name of "Kenny's Oil Company", an individual proprietorship. The Plaintiff acted as Shell jobber or distributor from January 1, 1969, until December 31, 1972, when his jobber contract was terminated by the Defendant allegedly because of Plaintiff's refusal to discontinue selling products competing with products offered by Shell. On November 30, 1971, the Plaintiff sold his sole proprietorship, Kenny's Oil Company, together with all of its assets including his Shell dealership, to Swift Oil Corporation. The consideration for this sale was the transfer of certain shares of stock in Swift Oil Corporation to the Plaintiff. The Swift Oil Corporation continued as the Shell jobber under Plaintiff's jobber contract until December 31, 1972. After November 30, 1971, Plaintiff was employed by Swift Oil Corporation at an annual salary of approximately $1,500.00 for part-time employment, his full-time employment apparently being as a distributor of certain tires sold by a competitor of the Shell Oil Company from which his annual income exceeded $21,000.00. Additionally, the Plaintiff owned or held under lease certain filling station properties leased to Swift Oil Corporation for disbursal of products associated with service stations. It is not clear from the pleadings or the evidence now before this Court whether these stations were used in disbursing Shell products or competing lines.

After termination of the jobber contract on December 31, 1972, the Swift Oil Corporation sold their business and Plaintiff sold his real estate interests (whether in fee or leasehold) and Plaintiff's stock in the Swift Oil Corporation to Spears Oil Company, Inc., a dealer acceptable to the Shell Oil Company. Thereafter, Plaintiff was no longer employed by the Swift Oil Corporation, allegedly because they were unable to continue in business because of cancellation of the jobber contract by Shell.

■ The Plaintiff's original complaint in this cause obviously contemplated that those losses suffered by the Plaintiff's successor in interest to the dealership which the Plaintiff had established, that is the Swift Oil Corporation, were damages to the Plaintiff resulting from an alleged violation of the antitrust laws. The fact that the sole stockholder may not recover damages under the antitrust laws for losses of his corporation had long ago been decided in this jurisdiction adversely to the Plaintiff's contentions. Martens v. Barrett, supra, and cases cited therein. The Defendant's motion for summary judgment on the complaint should, therefore, be granted as Plaintiff lacks standing to sue for damages to the corporation.

The Plaintiff now seeks to amend his complaint so as to allege his personal damages, that is, his loss of salary resulting from the Swift Oil Corporation's having sold its assets and terminated his employment and from alleged diminution of the value of his interests in the service station property hereinabove referred to, all of which allegedly resulted from termination of the jobber contract by defendant Shell.

■ The Defendant insists that leave to amend should be denied as the proposed amendments show no standing of the Plaintiff to bring the suit. Leave to amend a complaint should be denied if the proposed changes suggested would not cure the absence of factual support for a showing of standing to bring the suit indicated by prior evidence before the Court. Billy Baxter, Inc. v. Coca Cola Co., 2nd Cir., 431 F.2d 183. The question, then, is whether the proposed

amendments demonstrate that Plaintiff does not have standing to maintain antitrust litigation.

The Court in Martens v. Barrett, supra, 245 F.2d at 846, states the following:

> "And it is universal that where the business or property allegedly interfered with by forbidden practices is that being done or carried on by a corporation, it is that corporation alone, and not its stockholders, officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts brings about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership."

*Martens* is a case strongly parallel to the instant case. There the plaintiffs were the sole stockholders of a corporation which operated a service station for the Texas Company, and the corporation's dealership was allegedly terminated by the Texas Company because they refused to stock and sell certain tires, batteries and accessories sponsored by the Texas Company. The District Court and the Circuit Court found that, while the plaintiffs were actually damaged in the loss of their jobs and diminution of the value of their property by termination of such dealership by the Texas Company, the corporation that the plaintiffs had formed which owned the business which they operated was actually the party damaged and entitled to the cause of action under the antitrust law and that the individual plaintiffs had no standing to bring the suit.

The Defendant insists the Plaintiff falls within the ambit of Martens v. Barrett, supra, and the Plaintiff insists that his standing is demonstrated by the line of cases represented by Roseland v. Phister Manufacturing Co., 125 F.2d 417 (7th CCA, 1942). In *Roseland* the plaintiff had been a broker and salesman for several manufacturing companies, including one of the defendants, for a number of years and had built up a clientele, and the alleged violations by the defendants of the antitrust acts allegedly deprived plaintiff of an opportunity to make sales so that he was seriously damaged in his business. The defendants were companies which virtually controlled the fire extinguisher sales business in the various states in which the plaintiff was doing business, and the defendants had formed a virtual monopoly of the fire extinguisher business in those states and had, by terminating plaintiff's distributorship, seriously damaged him in his business. It appeared that Roseland, like Harris, had an extensive and intimate acquaintance with buyers and others, a thorough knowledge of their needs and a reputation for honesty and efficiency, and that he was, like Harris, doing so as an employee or representative of a corporation. Roseland was found to have had standing to proceed under the antitrust laws.

Somewhat similar situations existed in the other cases. In Dailey v. Quality School Plan, 5th Cir., 380 F.2d 484, Dailey, a regional salesman for ERSI, had for ten years built up their trade in wholesale magazine sales on a school plan during times when ERSI, defendant Quality and defendant Cowles were competitors in that business. When ERSI sold its business to Quality, Quality and Curtis had a monopoly in the business in the area in which Dailey was operating and Quality terminated Dailey's job. Dailey was held to have had a cause of action under the antitrust laws against Quality and others because their monopolistic practices damaged him in his business. Again in Nichols v. Spencer International Press, Inc., 7th Cir., 371 F.2d 332, an employee was found to have standing to sue his employer corporation and its competitors for entering "no-switching" agreements whereby the plaintiff and other employees of the defendant corporations would not be employed by competitors of their former employer for six months after termina-

tion of employment by former employers. Such an arrangement was held to have given standing to the plaintiff to sue his employer corporation and its competitors for violation of the antitrust acts. In Wilson v. Ringsby Truck Lines, Inc., D.C.Colo., 320 F.Supp. 699, plaintiffs, truck drivers for defendant trucking line, were held to have causes of action against their employer corporation where they had maintained and established a clientele and were injured in their businesses by the violations by their employer of the antitrust act.

Most of these cases which are relied upon by the Plaintiff are similar to the instant case in that an individual who had built up a business of his own by establishing clientele while working for a corporation was claiming damages to his own business independent of that of the corporation. But those cases vary from the Harris case in that plaintiffs' alleged damages are the direct result of the alleged antitrust violation and are not damages deriving or reflecting from damages directly resulting to a corporation from the alleged antitrust violation.

The other line of cases relied upon by the Defendant Shell hold that stockholders in, and landlords holding leases to, corporations injured by the violation of antitrust acts generally have no standing to bring suits for damages under such laws. The theory is that, if each creditor, shareholder or other person with some damage derived or reflecting from the damage to the corporation initially injured by the antitrust violations, had standing to assert treble-damage claims for such injuries, the courts would be flooded with a multiplicity of suits, and the defendant would be subject to multiple liability for the same alleged wrongs. The courts, therefore, saw fit to limit standing in antitrust suits to those persons directly subject to the violations and to exclude from standing those who claim standing by virtue of derivative or reflected damages.

The Court of Appeals for the Tenth Circuit in Gas-A-Car v. American Tetrofina, Inc., 484 F.2d 1102 (1973), stated the following:

"At the outset we note that § 4 of the Clayton Act has been given an interpretation by the courts which is more restrictive than would be the case if the Act were read literally. Although § 4 states in part that 'any person who shall be injured * * * may sue,' it is clear that not all parties injured by reason of violation of the antitrust laws are able to maintain damage suits. Several examples are shareholders, officers of corporations, creditors and landlords."

In Loeb v. Eastman Kodak Co., 183 F. 704 (3rd Cir. 1910), the Court held that a plaintiff who was damaged because he was a creditor and shareholder of a firm forced out of business by defendant's illegal (antitrust) conduct lacked standing to sue. Similar rulings followed in Ash v. International Business Machines, 353 F.2d 491 (3rd Cir. 1965), cert. den. 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); Peter v. Western Newspaper Union, 5th Cir., 200 F.2d 867, and in Martens v. Barrett, supra, where plaintiffs were the only stockholders of a corporation which did have standing. See also Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.N.Y., 30 F. Supp. 389; Gerli v. Silk Ass'n. of America, 2nd Cir., 36 F.2d 959; Bywater v. Matshushita Electric Co., 1971 Trade Cas. ¶ 73, 759; Walder v. Paramount Publix Corp., D.C.N.Y., 132 F.Supp. 912; Hans Hanson Welding Co., Inc. v. Am. Ship Building Co., 1973–2 Trade Cas. ¶ 74, 739.

For similar reasons, a landlord renting to a tenant directly damaged by an antitrust violation has no standing to sue for his damages reflecting or deriving from damages to his tenant. Melrose Realty Co., Inc. v. Loew's, Inc., 3rd Cir., 234 F.2d 518, cert. den. 352 U.S. 890, 77 S.Ct. 128, 1 L.Ed.2d 85; Harrison v. Paramount Pictures, Inc., 3rd Cir., 115 F.Supp. 312, affm'd. D.C.Pa., 211 F.2d 405, cert. den. 384 U.S. 828, 75 S.Ct. 45, 99 L.Ed. 653; Conf. of Studio

Unions v. Loew's, Inc., 9th Cir., 193 F.2d 51, cert. den. 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687; Lieberthal v. North Country Lanes, Inc., D.C.N.Y., 221 F.Supp. 685; DiGaetano v. Texas Co., 3rd Cir., 300 F.2d 895; Walder v. Paramount Publix Corp., supra; Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., 2nd Cir., 454 F.2d 1292, cert. den. 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132. In *Calderone* the Court stated that standing to bring suits under the antitrust laws is limited to those against whom the violation is aimed, such as a competitor of the person sued, to the exclusion of those damaged by virtue of their business relationships with those directly damaged. The Court reasoned that this coincides with Congress' fundamental purpose of strongly discouraging violations but of establishing a reasonable and easily identifiable cut-off that avoids opening a floodgate to all, no matter how remote their interest or incidental their relationship.

■ This Court is of the opinion that Harris' claim falls within the ambit of Martens v. Barrett, supra, and that Harris departed from the status of Roseland when he sold all interest that he might have had in the business to the Swift Oil Corporation, which was and is the sole organization which had standing to bring suit for the damages allegedly resulting from the antitrust violations. In the words of the Fifth Circuit in *Martens*, 245 F.2d at page 846, Harris lacks standing to sue under the proposed amendments,

"* * * even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring(s) about reduced earnings, lower salaries * * * or diminution in the value of ownership."

This Court is, therefore, of the opinion that leave to amend the complaint as proposed by Harris should be denied because the proposed changes suggested would not cure the absence of factual support for a showing of standing to bring the suit indicated by prior evidence before the Court. Billy Baxter, Inc. v. Coca Cola Co., supra.

## THE COUNTERCLAIMS

Defendant also insists upon its motion for summary judgment on the Counterclaims 2, 3 and 4. It is significant that the Plaintiff relies upon the record on motion for summary judgment and did not make any response whatsoever to the motions for summary judgment. The rule provides as follows:

"When a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him." Rule 56, Federal Rules of Civil Procedure, (emphasis added).

The question, then, for this Court is whether or not summary judgment on the counterclaims is "appropriate" under circumstances shown by the facts in this case as demonstrated by evidence properly before this Court on motion for summary judgment.

■ The Court is of the opinion that Defendant Shell is not entitled to summary judgment on any counterclaim because it would not be appropriate to grant a finding of liability if the act of the Plaintiff in adulterating Shell's products was of benefit to Shell rather than a damage to Shell. The Plaintiff contends that, while he did sell some gasoline made by another company, he did so in order to maintain the customers and business of the Shell Oil Company at a time when the Shell Oil Company would not deliver him gasoline at competitive prices and that his actions could well be considered as a benefit rather than as a damage to Shell. It would, therefore, appear that, construing the facts most favorably for the Plaintiff, Shell would have no claim for damages for the apparently admitted viola-

tion of law by the Plaintiff. While this contention was by no means proved by the evidence, this is a possible inference which might be indulged in favor of Harris and it, therefore, appears that there is a question of fact for the Court to determine before determining liability of Harris to Shell under any of the counterclaims. It, therefore, is the opinion of this Court that Shell is not entitled to summary judgment on any counterclaim.