382 F.2d 925
 NATIONWIDE AUTO APPRAISER SERVICE, INC., a dissolved
corporation, Fred Hochgraefe, Dan R. Sheehan, and Charles
Cothran, Liquidating Trustees of Nationwide Auto Appraiser
Service, Inc., a dissolved corporation, Appellants,
v.
ASSOCIATION OF CASUALTY AND SURETY COMPANIES, an
unincorporated association, American Mutual Insurance
Alliance, a corporation, and National Association of Mutual
Casualty Companies, a corporation, Appellees.
 No. 8558.
 United States Court of Appeals Tenth Circuit.
 Sept. 1, 1967.
 
 Richard L. Bohanon, Oklahoma City, Okl. (Barefoot, Moler, Bohanon & Barth, Oklahoma City, Okl., of counsel, with him on the brief), for appellants.
 Richard B. McDermott, Tulsa, Okl. (Robert MacCrate, Hugh B. Cox, Henry P. Sailer, D. E. Hammer, Sullivan & Cromwell, New York City, Covington & Burling, Washington, D.C. and Boesche, McDermott & Eskridge, Tulsa, Okl., of counsel, with him on the brief), for appellees.
 Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 The appellants, a dissolved Oklahoma corporation and its liquidating trustees, appeal entry of summary judgment dismissing their complaint seeking treble damages under section 4 of the Clayton Act, 15 U.S.C. 15.
 
 
 2
 The appellant corporation, 'Nationwide,' was organized by the three appellant trustees to sell exclusive territorial franchises to independent businessmen engaged in appraising damage to automobiles. Appraisers securing a Nationwide franchise were permitted to use the Nationwide trade name, and Nationwide indicated that it would provide business advice to its franchise holders and would conduct extensive advertising of its trade name and appraisal services with insurance companies since a substantial percentage of the auto damage appraisal work is performed for such companies. The initial cost of a Nationwide franchise was $1,000, and the franchise holder was further obligated to pay five per cent of its gross receipts to Nationwide for the duration of the franchise. Nationwide itself did not perform damage appraisals. Before its dissolution, after operating about sixteen months, Nationwide had four franchised appraisers, one each in Wichita, Fort Smith, Tulsa, and Oklahoma City.
 
 
 3
 The appellees are associations whose members are insurance companies. Although the appellee associations provide consultation, advice, and service to their members, the associations do not write insurance, settle claims, or appraise auto damage. Nationwide's complaint alleges that the appellee associations influenced their members to 'sponsor' a single appraiser in a particular locality and thereafter to refer all auto damage appraisals to the sponsored appraiser, excluding other appraisers in the same locality. Nationwide's complaint further alleges that the plan of sponsored appraisers unreasonably restrained competition in trade and commerce in violation of the Sherman Act, and that the appellee associations have thus conspired to restrain trade and commerce, resulting in the elimination of competition and the exclusion of Nationwide and its franchise holders from a substantial segment of the damage appraisal business. The appellees deny Nationwide's allegations but of course concede that the allegations of the complaint must be taken as true because appeal is taken from summary judgment.
 
 
 4
 The appellee associations moved for summary judgment on the ground that Nationwide lacked standing to sue under section 4 of the Clayton Act because the undisputed facts disclosed that the alleged injury to Nationwide was indirect, secondary, and derivative. The motion was granted as the District Court concluded that Nationwide would be injured only indirectly by the effect of the alleged violations of the Act on its Franchise holders who were the parties actually engaged in appraising auto damage. The trial court held that 'the injury to such a corporation (appellant) by the inability of its franchise holders to secure appraisal assignments does not meet the direct injury requirement of Section 4 of the Clayton Act.' The trial court thus held that Nationwide lacked standing to sue for treble damages and the court granted summary judgment for the appellee associations.
 
 
 5
 Nationwide does not suggest on appeal that the operative facts underlying the trial court's decision are in dispute. Nationwide's position is that the trial court erred by imposing a 'direct injury' limitation on standing to sue under section 4 when the clear language of section 4 requires only that the plaintiff suffer injury to its 'business or property.'[1] Nationwide contends that sufficient injury to its 'business or property' under section 4 is alleged in the complaint because the violations of the Sherman Act have excluded its four franchised appraisers from the damage appraisal business, thus reducing or eliminating income to Nationwide derived from its reservation of five per cent of the gross receipts of its franchised appraisers.
 
 
 6
 The facts as to the nature of the business of the parties were fully developed for the summary judgment proceedings, and the complaint contains clear and precise allegations as to the actions of defendants. The issue of law thereby presented was suitable for decision on summary judgment. The appellant on appeal does not complain that the case was unsuitable for such disposition.
 
 
 7
 The complaint describes the trade or commerce affected as being '* * * the automobile material damage appraisal business.' The action is thus between a corporation as plaintiff which sold franchises to persons in such business and several trade associations as defendants whose members patronize those engaged in the business. The members of the defendant associations are independent business entities as are plaintiff's franchise holders. As mentioned above the wrongful acts asserted in the complaint consist of the influence by the defendant associations upon their members to secure auto damage appraisals from a single appraiser in each community.
 
 
 8
 The issue before us is whether the trial court was correct in its holding that the damages to plaintiffs as alleged in the complaint are not recoverable under the Clayton Act. This in turn depends upon whether the doctrine of 'remoteness' or 'directness of injury' or 'derivative damages' should be here applied. If it is, as the trial court held, the plaintiff cannot prevail as a matter of law.
 
 
 9
 There are a relatively large number of decided cases dealing with this issue, and it is apparent that with a question of this nature any rules or standards must be in the most general terms. Each case contains a unique combination of facts, and cannot be fitted into narrow categories. The case law concerns most frequently the suppliers of materials or ingredients to the one in the business first affected by defendant's acts, to landlords and licensors of such persons affected, stockholders, creditors, and labor unions.
 
 
 10
 The plaintiff-appellant here points to general statements in a number of decisions, but relies mainly on South Carolina Council of Milk Producers, Inc. v. Newton, 360 F.2d 414 (4th Cir.); Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir.); Hoopes v. Union Oil Co. of Calif., 374 F.2d 480 (9th Cir.), and Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456.
 
 
 11
 The Radovich case contains an admonition that a court should not add requirements beyond the language of the Sherman Act to further burden the litigant; but the case did not concern the issue before us here, and the Supreme Court, as both parties observe, has not passed on the question.
 
 
 12
 The South Carolina Council of Milk Producers case, supra, does contain many elements which are similar to the case at bar. The action was there brought by a trade group made up of members in the milk producing business who sold raw milk to milk processors, and by two of its officers who were milk producers. The defendants purchased processed milk and sold it in retail stores or had a connection with such activities. The wrongful act allegations related to efforts by defendants to keep the milk prices down. The trial court there concluded on summary judgment that the damages to the association were too remote. The court of appeals reversed, and held that the action could be maintained because plaintiff alleged facts showing it was '* * * with the sector of the economy in which the violation threatened a breakdown of competitive conditions and that he was proximately injured thereby.' The court found that the action could be maintained although the plaintiffs did not sell directly to defendants, and the milk was processed between the time the members of plaintiff sold it and it was bought by defendants. The court held that the Sherman Act did not require by its terms that the parties be in a direct contractual or competitive relationship. The court of appeals in its opinion however stated the plaintiffs could not recover if the trial showed that the '* * * damage was merely incidental or consequential, or if the defendants' antitrust acts are so removed from the injury as to be only remotely causative * * *,' for then plaintiff had not been injured by reason of anything forbidden in the Act, citing Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2d Cir.); Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir.), and other cases. The court then said this determination must be made by the trial court on the basis of evidence offered. The court then notes the admonition of the Supreme Court to use sparingly the summary disposition of antitrust cases.
 
 
 13
 We have discussed the South Carolina Council of Milk Producers case at some length because it is an important case and strongly urged by appellants; however, we do not consider it as precedent for a new approach to the indirect injury requirement established in the older cases. Instead, the case leaves the determination whether the damage was 'merely incidental or consequential' to the trial court upon a further development of the facts. In effect the decision holds that the case was not ready or suitable for summary disposition on the question of law, and may indicate a less restrictive standard to be met by a plaintiff to avoid summary disposition in cases of this nature. The opinion does contain some broad language on the availability of the remedy, and also uses the terms of proximate cause, the 'target area,' and the 'sector of the economy threatened.' This cited case thus provides in its dicta some added terminology to the 'incidental,' 'derivative,' 'indirect,' 'remote,' of the older cases. Snow Crest Beverages, Inc. v. Recipe Foods, Inc., 147 F.Supp. 907 (Mass.); Loeb v. Eastman Kodak Co., 183 F. 704 (3d Cir.); Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2d Cir.); Volasco Products Co. v. Lloyd A. Fry Roofing Co., 308 F.2d 383 (6th Cir.), and the landlord-tenant theater cases. It is significant, as appellee here points out, that the court in the cited case in the portion of the opinion relating to whether the damage was 'incidental' or 'consequential' does cite Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2d Cir.), a typical suppliers case applying the indirect damage doctrine, as well as the Karseal case and Conference of Studio Unions v. Loew's Inc., 193 F.2d 51 (9th Cir.).
 
 
 14
 In Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir.), the court had before it a motion to dismiss granted by the trial court. The appellate court reversed, golding that plaintiff was 'within that area of the economy which is endangered,' and was within the 'target area of the illegal practices' of the defendant. In the cited case, which had been preceded by a civil antitrust suit brought by the Government in which it obtained a judgment, the plaintiff produced and sold a product which was sold at filling stations as were competitive products of the defendant. The illegal acts asserted concerned defendant's exclusive dealing contracts with the station operators which restrain trade in the products made by plaintiff. Thus the action concerns competitive products of plaintiff and defendant, and exclusive dealing contracts relating to such products with the potential customers of both parties. In the cited case, there were distributors of plaintiff's products which actually purchased the products from plaintiff and sold them to the stations. This the defendant urged made the damages indirect, but the court held otherwise on the motion to dismiss. Again this cited case may indicate a relaxation of pleading requirements to avoid a summary judgment in cases of this nature.
 
 
 15
 The above cited Karseal case thus concerned the sale of the competitive products, and the acts of defendant with regard thereto. The opinion contains terminology similar to the later South Carolina Council case, and the court finds the allegations to meet the 'target area' test. This Karseal case is an important one also, but as might be expected it concerns quite a different relationship between the parties than we have before us in view of the direct competition. The same must be said about Hoopes v. Union Oil Co. of Calif., 374 F.2d 480 (9th Cir.), where the damages according to the complaint resulted directly from the acts of the defendant upon the handling of the real estate by plaintiff.
 
 
 16
 The newer and the older cases both present much the same terms to work with although expressed in somewhat different language, and we need not seek some new language to express the same doctrine. It would appear however that the Ninth Circuit in adopting the 'target area' and 'sector of the economy' terms permits allegations of a less direct relationship to withstand motions for summary disposition than do the other circuits, excepting perhaps the Third Circuit which adopts a similar standard.
 
 
 17
 The Supreme Court has said that summary disposition of antitrust cases should be used sparingly, but it has not said that it should not be used when the facts are developed and the legal issue clearly presented; otherwise the Rules of Civil Procedure must be ignored. The rules must be applied to these cases in the same manner as they are applied to others. We see nothing that a trial of the case at bar might develop further by way of facts which would be necessary or useful to a decision, and appellant urges none. Thus taking the complaint on face value and the facts as developed on the motion for summary judgment, we hold that under the authorities the plaintiff here has not alleged a cause of action under the Clayton Act because its position relative to the injuries resulting from the alleged acts of the defendants is too remote.
 
 
 18
 The plaintiff seller of franchises is thus separated to such an extent from its franchise holders, despite the royaltypercentage of business connection, that its damages resulting from the acts of defendants would come about 'indirectly,' 'remotely,' or as 'derivative damages.' There is no product competition, no meeting of the landlord-tenant standard; but instead the relationship more nearly approaches the supplier cases, the licensee arrangements, or the union membership cases. It would serve no purpose to further review the authorities in this opinion. The facts of the case before us and our view of the law issue dictate that we follow the general standards of the decided cases in such comparable situations rather than to seek to extend the right of recovery or to relax the rule in instances of summary disposition. The directness rule has been criticized, but it appears to be through the years a practical application of the Clayton Act, and in view of the lapse of time, it must be assumed that it accords with the intention of Congress. Loeb v. Eastman Kodak Co., was decided in 1910, Snow Crest Beverages in 1956, Productive Inventions in 1955, and many theater cases during the intervening period. If the times have changed, and the needs of business have changed to bring about a need to extend the right of recovery to others, Congress would have so indicated.
 
 
 19
 Affirmed.
 
 
 
 [1]
 Section 4, Clayton Act, 15 U.S.C. 15: 'Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * *, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.'