**PETER J. ALLEN CORPORATION, a California corporation, doing business as Allen's Furniture, Plaintiff,**

v.

**CALIFORNIA FURNITURE SHOPS, LTD., a California corporation, and Goldeen's, Inc., a California corporation, doing business as Goldeen's Furniture, Defendants.**

No. C-69403.

United States District Court,
N. D. California.

May 18, 1972.

438

Irvin Goldstein, San Francisco, Cal., for plaintiff.

Iverson, Yoakum, Papiano & Hatch, Los Angeles, Cal., for defendant California Furniture Shops, Ltd.

Bernard Petrie, San Francisco, Cal., for defendant Goldeen's, Inc.

## CONCLUSIONS OF LAW, FINDINGS OF FACT, AND MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

RENFREW, District Judge.

The motions of defendants California Furniture Shops, Limited ("Cal Shops") and Goldeen's, Inc. ("Goldeen"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure came on regularly for hearing before this Court on March 27, 1972. The Court having fully examined and considered defendants' motions, all contentions of plaintiff and defendants pertaining to these motions, and all depositions, affidavits, memoranda and authorities cited therein, makes the following Findings of Fact and Conclusions of Law setting forth the facts which entitle defendants to summary judgment on the grounds that there is no genuine issue as to any material fact respecting the jurisdiction of this Court.

### FINDINGS OF FACT

1. Plaintiff Peter J. Allen Corporation ("Allen") for many years prior to filing its complaint before this Court on November 18, 1969, sold and presently continues to sell retail furniture and other home appointments in San Jose, California.

2. Among the articles sold by Allen was Early American furniture (sometimes referred to as Colonial furniture) manufactured by Cal Shops solely at its manufacturing plant which was located in Los Angeles, California.

3. In the latter part of 1966 Cal Shops notified Allen that it would discontinue its sale of Early American furniture to Allen other than for a limited period of time and on a reduced basis. The sales after 1966 were made to accommodate commitments that had been previously made by Allen to its customers and to fill in partially depleted sets which Allen had in inventory. These sales on a reduced basis were all made in 1967 and for the first three or four months of 1968, after which there were no further sales by Cal Shops to Allen.

4. Defendant Cal Shops was engaged in interstate commerce in the manufacture of its Early American furniture during all times pertinent to this action by virtue of its purchase of substantial quantities of wood and other materials from various suppliers throughout the United States and Canada.

5. No showing was or could have been made that defendant Cal Shops had any control or potential control over the interstate market for wood and the other materials which Cal Shops utilized in its production of Early American furniture.

6. No showing was or could have been made that defendant Cal Shops had any control or potential control over the interstate market for Early American furniture.

7. At no time between the years commencing 1960 and continuing through the year 1969 did Allen sell any Early American furniture purchased from Cal Shops outside of the State of California. During this same period of time Allen had no customers to whom Early American furniture purchased from Cal Shops was delivered outside of the State of California.

8. The total dollar volume of purchases by Allen from Cal Shops of Early American furniture and the total dollar amount of orders placed by Allen with Cal Shops for such furniture for the years 1962 through 1968 was as follows:

|      | $ volume of purchases | $ volume of orders placed |
|------|------------------------|---------------------------|
| 1962 | $ 7,128 | $ 7,128 |
| 1963 | 4,556 | 4,556 |
| 1964 | 14,967 | 14,967 |
| 1965 | 14,011 | 14,011 |
| 1966 | 12,674 | 13,056 |
| 1967 | 7,303 | 7,996 |
| 1968 | 2,939 | 8,860 |

9. The defendant Goldeen is a corporation which has for many years operated a department store for home fixtures and appointments in San Jose, California, and since about January 1965 one of Goldeen's stores has been located about six or seven blocks from the store operated by Allen.

10. Goldeen first started buying Early American furniture from Cal Shops in the late 1940s or early 1950s and continued to make purchases from Cal Shops through the early 1960s. At some time prior to 1966 Goldeen decided on its own initiative to discontinue these purchases from Cal Shops. In late 1966 Goldeen resumed purchases of Early American furniture from Cal Shops and has continued to make such purchases since that time.

11. Since Goldeen resumed purchases of Cal Shops' Early American furniture in 1966, its total purchases were as follows:

| 1966 (August–December) | $16,946 |
| 1967 | $26,690 |
| 1968 | $35,592 |

12. In 1966 and up until the present time there have been more than fifty manufacturers of Early American furniture within the United States. Cal Shops is not one of the five largest manufacturers of Early American furniture.

13. Even if Allen had been eliminated as a competitor by reason of the activities of defendants in relation to the sale and distribution of Early American furniture, such elimination would not have interfered with the interstate flow of wood and other materials necessary for the manufacture of Early American furniture.

14. In 1966 and up until the present time there have been many manufacturers of Early American furniture whose lines are carried by furniture stores in the San Jose area and in the San Francisco Peninsula area, and there are five such stores carrying Early American furniture within the San Jose area which are competitive with the product manufactured and sold by Cal Shops.

15. All evidence relevant to the jurisdictional issue is now before this Court.

## CONCLUSIONS OF LAW

1. There is no genuine issue as to any of the foregoing facts which are determinative of this action.

2. The market and the activities involved in this case are intrastate in character involving no trade or commerce between the states.

3. The interstate trade or commerce of the defendant Cal Shops regarding the supply of wood and other materials necessary for the manufacture of its Early American furniture did not suffer any anticompetitive effects from the acts of defendants of which plaintiff complains.

4. This Court is without jurisdiction in this case under sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2).

5. Defendants are entitled to a summary judgment dismissing this action, and judgment should be entered accordingly.

## MEMORANDUM OF DECISION

In this action plaintiff Peter J. Allen Corporation ("Allen") seeks treble damages against defendants Cal Shops and Goldeen for alleged violations of sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2). For many years plaintiff has sold and continues to sell retail furniture and home appointments in San Jose, California.* Defendant Cal Shops is a California corporation engaged in the manufacture, sale and distribution of Early American furniture with its sole manufacturing plant located in Los Angeles, California. Defendant Goldeen is a corporation engaged in the retail home furnishings business and a competitor of plaintiff, located in San Jose, California.

Allen purchased Early American furniture from Cal Shops from 1962 through 1968. In 1966 Cal Shops informed plaintiff that it had decided to discontinue its sales of furniture to plaintiff other than for a limited period of time and only on a reduced basis. These sales of Early American furniture from 1966 to 1968 were made to accommodate commitments that had previously been made by Allen to its customers or to fill in partially depleted furniture sets which Allen had in inventory.

Defendant Goldeen had purchased Early American furniture from Cal Shops throughout the early 1960s. At some time prior to 1966 Goldeen decided on its own initiative to discontinue its purchases from Cal Shops. In 1966 Goldeen again resumed its purchases of Cal Shops' Early American furniture and has continued to make such purchases since that time. Allen alleges that there was a conspiracy between defendants Cal Shops and Goldeen, the essence of which resulted in an agreement that Cal Shops would no longer sell its furniture to plaintiff. Plaintiff alleges that this agreement was a conspiracy in restraint of trade in violation of section 1 of the Sherman Act and an attempt by defendants to monopolize the sale of Early American furniture in the San Jose area in violation of section 2 of the Sherman Act. Defendants deny any concerted action with respect to the termination of sales of Early American furniture to plaintiff and further deny that either defendant individually or in concert attempted to monopolize the sale of Early American furniture. Defendants further claim that this Court is without jurisdiction to determine plaintiff's contentions under the Sherman Act and have filed motions for summary judgment of dismissal.

In determining the propriety of granting defendants' summary judgment motion, this Court has given careful consideration to the Supreme Court's mandate that summary judgment procedures "should be used sparingly in complex antitrust litigation where motive and intent play leading roles * * *" (Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). This Court is also mindful of the admonition of the Court of Appeals for the Ninth Circuit against using summary proceedings to dispose of antitrust litigation. See Anderson v. American Automobile Ass'n, 454 F.2d 1240, 1242 (1972). If under any reasonable construction of the facts in evidence and under any acceptable theory of law Allen would be entitled to prevail, a summary judgment against him cannot be sustained. Industrial Bldg. Materials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1340 (9 Cir. 1970); Consolidated Electric Co. v. United States for Use and Benefit of Gough Industries, Inc., 355 F.2d 437, 438 (9 Cir. 1966). However, where after careful review of the pleadings, depositions, answers to interrogatories and admissions on file, together

---

* This opinion includes a summary review of the facts pertinent to defendants' summary judgment motion. A more extensive review of the facts in this case is set forth in the Court's Findings of Fact and Conclusions of Law.

with all the affidavits, the Court finds that there is no genuine issue as to any material fact, summary judgment may issue when the moving parties are entitled to a judgment as a matter of law. Rule 56(c) of the Federal Rules of Civil Procedure. After a considered scrutiny of all of the documents in evidence, this Court finds that all the facts relevant to the jurisdictional issue are now before the Court and are fully developed with the jurisdictional issue squarely presented. Under such circumstances the trial of the case would develop no further facts which would in any way be useful to or serve to alter this Court's decision. First Nat. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Nationwide Auto Appraiser Service, Inc. v. Association of Cas. and Sur. Companies, 382 F.2d 925, 929 (10 Cir. 1967).

Allen bases its claim of jurisdiction in this Court under sections 1 and 2 of the Sherman Act upon defendant Cal Shops' concession in its memorandum of points and authorities submitted in support of its summary judgment motion that in its manufacture of Early American furniture it purchased substantial quantities of wood and other materials from various suppliers throughout the United States and Canada. Plaintiff contends that this concession that defendant engages in interstate commerce is sufficient to vest this Court with jurisdiction. However, as the Ninth Circuit has noted in Page v. Work, 290 F.2d 323, 330 (1961):

"The test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce, but that the conduct complained of affects the interstate commerce of such business."

The word "affect" has been used in two different situations under the antitrust laws. Interstate commerce requisite for jurisdiction under the antitrust laws can be established if the plaintiff can meet either or both of the following alternative tests:

"(1) That the acts complained of occurred within the flow of interstate commerce. This is generally referred to as the 'in commerce' theory.

"(2) That the acts complained of, occurred wholly on the state or local level, in intrastate commerce, but substantially *affected* interstate commerce" (Las Vegas Merchant Farmers Ass'n v. United States, 210 F.2d 732, 739–740, n. 3 (9 Cir. 1954), cert. denied, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954).

As to the first test, the undisputed fact that during all of the years pertinent to this action Allen neither sold nor delivered any Early American furniture purchased from Cal Shops outside of the State of California is dispositive of the "in commerce" issue. Put quite simply, none of the acts of which plaintiff complains occurred within the flow of interstate commerce.

The second question which the Court faces is whether the interstate activities of Cal Shops in its manufacture, distribution and sale of Early American furniture *affects* interstate commerce even though such activities are not within the flow of commerce. In Page v. Work, 290 F.2d 323 (1961) the Court of Appeals for the Ninth Circuit has established the standard that "in order for federal antitrust jurisdiction to be sustained the effect on interstate commerce of an alleged antitrust violation in a local area must be direct and substantial, and not merely inconsequential, remote or fortuitous" (at p. 332).

In Page v. Work, supra, the alleged restraint involved defendants' methods of soliciting legal advertising in newspapers printed, published and circulated in Los Angeles County. There it was conceded that both plaintiff and defendants engaged in interstate commerce by virtue of their purchase of newsprint and other supplies from sources outside of California. Similarly, in the instant case it was conceded that defendant Cal Shops engaged in interstate commerce by virtue of its purchase of wood and other furniture materials from sources outside of California. In Page v. Work the Court of Appeals for the Ninth Circuit found that the legal advertising market

at issue was purely local in nature. The Court held that defendants' activities had only an insubstantial and indirect effect on interstate commerce, insufficient to establish antitrust jurisdiction in the Federal courts. Similarly, in the instant case, this Court has found that the alleged restraint on competition of which plaintiff complains involving defendants' activities in the distribution and sale of Early American furniture were completely intrastate in character. This Court has also found that there has been no showing that the defendants' distribution and sales practices had any direct and substantial effect upon interstate commerce. Furthermore, in Page v. Work, the Court disposed of plaintiff's contention that defendants' regular purchases of newsprint materials from sources outside of California established the requisite effect upon interstate commerce in finding that defendants were in no position to restrict competition in the newsprint materials market. Similarly, in the instant case, this Court has found that no showing was or could have been made that defendant Cal Shops had any control or potential control over the interstate market in wood or other appropriate furniture materials which were utilized in the production of its Early American furniture. As with the newsprint materials market in Page v. Work, defendant Cal Shops had no power to restrict competition in the furniture materials market. Given these findings of fact, there remains no genuine issue of material fact as to whether defendants' actions of which plaintiff complains had either a direct or a substantial effect upon interstate commerce.

The undisputed facts found by the Court reveal that plaintiff can satisfy neither of the two antitrust jurisdictional tests. Therefore it is clear that this Court does not have jurisdiction over the controversy alleged in this action. Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, where this Court has found that there are no facts "showing that there is a genuine issue for trial" relating to the jurisdiction of this Court, defendants are entitled to summary judgment. In this regard the words of Mr. Justice Marshall in First Nat. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968) are appropriate:

> "While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint."

Given the absence of any significant probative evidence supporting federal antitrust jurisdiction, it is hereby ordered that defendants' motions for summary judgment of dismissal are granted, and judgment should be entered accordingly.