INFORMATION RESOURCES,
INC., Plaintiff–Appellant,

v.

The DUN AND BRADSTREET CORPO-
RATION, A.C. Nielsen Company, and
I.M.S. International, Inc., Defendants–
Appellees.

Docket No. 01–7640.

United States Court of Appeals,
Second Circuit.

Argued Feb. 7, 2002.

Decided May 24, 2002.

Brian P. Norton, Freeborn & Peters, Chicago, IL, (Michael J. Kelly, Michael P. Kornak, David S. Becker Freeborn & Peters, Chicago, IL, and Victor S. Friedman, Fried, Frank, Harris, Shriver & Jacobson, New York, N.Y. on the brief), for Plaintiff–Appellant.

Sidney S. Rosdeitcher, Paul, Weiss, Rifkind, Wharton & Garrison, New York, N.Y. (Leslie Gordon Fagan, Robert S. Smith, Aidan Synnott, Daniel A. Crane, on the brief), for Defendants–Appellees.

* The Honorable Nicholas G. Garaufis, United States District Judge for the Eastern District of New York, sitting by designation.

Before: POOLER and SOTOMAYOR, Circuit Judges, and GARAUFIS, District Judge.*

SOTOMAYOR, Circuit Judge.

Plaintiff Information Resources, Inc. ("IRI") appeals the grant of partial summary judgment to defendants Dun & Bradstreet Corp., A.C. Nielsen Co., and I.M.S. International, Inc. (collectively "Nielsen"), by the United States District Court for the Southern District of New York (Stanton, J.). IRI alleged that Nielsen engaged in a host of anticompetitive activities both in the United States and abroad with the purpose of destroying IRI, Nielsen's only true competitor. The district court awarded Nielsen partial summary judgment on the ground that IRI lacks antitrust standing with respect to Nielsen's conduct in certain foreign nations, where the true victims of Nielsen's alleged anticompetitive activity would be IRI's foreign subsidiaries and affiliates. *See Information Resources, Inc. v. Dun & Bradstreet Corp.*, 127 F.Supp.2d 411, 415 (S.D.N.Y.2000). The court entered final judgment on this determination pursuant to Fed.R.Civ.P. 54(b). We hold that the certification of final judgment was improper because the district court's determination did not have the necessary elements of finality. We therefore dismiss the appeal.

**BACKGROUND**

IRI and Nielsen are both providers of retail tracking services. These services, as described by the district court,

> involve the continuous collection of data on the sale of consumer packaged goods.

From this data, retail tracking services suppliers produce estimates of trends in sales of product categories and brands, by relevant geographic region for each product category being tracked.

In short, a retail tracking service is the provision of information to manufacturers and retailers of consumer goods concerning turnover, market share, pricing and other aspects of the sale of fast moving consumer goods and analysis of that information to reveal market trends, business conditions, and the like.

*Information Resources*, 127 F.Supp.2d at 412 (citation omitted). Both Nielsen and IRI provide these services in the United States. While Nielsen also offers these services in several foreign countries, IRI generally operates abroad through an assortment of subsidiaries and joint ventures. These foreign affiliates "find the foreign clients, obtain the data from these clients, and deliver the completed reports to them." *Id.* at 414. The data are processed and the resulting reports are generated by IRI in the United States.

In this action, IRI alleges that Nielsen engaged in a variety of anticompetitive conduct, both in the United States and abroad, with the purpose of destroying IRI as competition in the retail tracking services industry. The alleged antitrust violations include tying and bundling contracts in violation of Section 1 of the Sherman Act, monopolization and attempted monopolization of the export (that is, foreign) markets in violation of Section 2 of the Sherman Act, and attempted monopolization of the United States market in violation of Section 2 of the Sherman Act. Among the principal allegations is that Nielsen would offer "favorable pricing conditions if Nielsen's services were purchased in a considerable number of countries, including, at least, one country where IRI was present." *Information Resources*, 127 F.Supp.2d at 413. For purposes of the motion that is the subject of the instant appeal, Nielsen did not contest these allegations. *Id.*

Nielsen moved for partial summary judgment on the grounds that (1) IRI lacks standing to sue for injuries suffered in foreign markets because the alleged injury was actually suffered by its subsidiaries and joint ventures; and (2) the district court lacks subject matter jurisdiction under the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA"), to hear such claims because the foreign activities of which IRI complains are beyond the reach of United States antitrust laws. *Id.* The district court granted the motion on the sole ground that IRI lacks standing with respect to harm suffered in the foreign markets. *Id.* at 415. Having found that IRI lacks standing, the district court had no occasion to address whether IRI's claim would have been barred by the FTAIA. IRI then filed a motion to clarify the district court's order and moved for leave to amend its complaint, both to add the foreign affiliates as plaintiffs and to assert claims under Article 82 of the Treaty of Rome. On February 6, 2001, the district court issued an order clarifying its previous judgment and denying leave to amend on the basis that (1) the FTAIA deprived the court of subject matter jurisdiction over the foreign affiliates' claims; and (2) the affiliates' Treaty of Rome claims presented novel and complex questions of foreign law, counseling against the exercise of supplemental jurisdiction. *Id.* at 415–18.

IRI asked the district court to enter final judgment under Fed.R.Civ.P. 54(b) with respect to the grant of partial summary judgment and denial of leave to amend. Over Nielsen's objection, the district court entered a Determination and Direction pursuant to Rule 54(b), directing

the clerk to enter partial final judgment. IRI appealed the judgment and Nielsen moved to dismiss the appeal on grounds that the Rule 54(b) certification was improperly granted.

## DISCUSSION

### I. The Instant Appeal

We recognize that this appeal poses a complex question of law with important implications for antitrust policy. The question of standing in this case hinges on how one characterizes the unique relationship between IRI and its foreign affiliates.

IRI contends that the relationship is akin to that between a manufacturer and independent dealers. IRI cites to a discussion in Phillip E. Areeda et al., *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (2d ed.2000)—a leading treatise that canvasses antitrust policy and culls from case law and academic commentary. Areeda describes a situation in which a manufacturer seeks to harm a rival manufacturer through anticompetitive conduct at the dealer level. In Areeda's hypothetical, the defendant is vertically integrated, including both the manufacturing entity and the dealer. The plaintiff operates only on the manufacturing level, using independent dealers for distribution. Areeda explains that "[s]tanding should be accorded the manufacturer" because "the two manufacturers are competitors in every relevant economic sense, even when one or more intermediaries lie between him and consumers." II *id.* ¶ 348f1, at 404. Areeda distinguishes this "rival manufacturer" from a mere "supplier," explaining that the former should be afforded standing while the latter should not. *Id.*

IRI argues that Nielsen is comparable to the integrated defendant in Areeda's hypothetical, while IRI's affiliates are es-sentially the "dealers" or "distributors" of the data reports produced by IRI. *See, e.g., Karseal Corp. v. Richfield Oil Corp.,* 221 F.2d 358, 362–65 (9th Cir.1955) (holding that manufacturer of car wax had standing to sue distributor though they did not compete at same market level); *see also South Dakota v. Kansas City S. Indus., Inc.,* 880 F.2d 40, 47 (8th Cir.1989) (citing with approval *Karseal* and the Areeda discussion); *South Carolina Council of Milk Producers, Inc. v. Newton,* 360 F.2d 414, 419 (4th Cir.1966) (holding that milk producers had standing in suit alleging anticompetitive activity at the wholesale and retail level, noting that the difference between the raw milk produced by plaintiffs and the homogenized milk sold by defendants "is not so distinct as to categorize the plaintiffs as suppliers of a mere ingredient of the commodity sold by the defendants"); *Citicorp v. Interbank Card Ass'n,* 478 F.Supp. 756, 763–64 (S.D.N.Y.1979) (holding that bank had standing in suit alleging anticompetitive activity in credit card market even though card issuers were more direct participants); *Sulmeyer v. Seven–Up Co.,* 411 F.Supp. 635, 638–39 (S.D.N.Y.1976) (holding that producer of soft drink concentrate had standing in suit alleging anticompetitive activity in the marketing and distribution of soft drinks).

Nielsen does not dispute the principles set forth by Areeda. Rather, it argues that IRI is more accurately characterized not as a manufacturer or producer but as a mere "supplier of one input—data processing." *Cf. Serfecz v. Jewel Food Stores,* 67 F.3d 591, 597 (7th Cir.1995) (mall owners who lease rental space to grocery stores do not have standing to bring action alleging anticompetitive activity in the retail grocery market); *Kansas City S. Indus.,* 880 F.2d at 47–49 (State of South Dakota's role as supplier of water rights for coal slurry pipeline project does not support antitrust

standing in suit alleging anticompetitive conduct aimed at pipeline company); *Associated Radio Serv. Co. v. Page Airways, Inc.*, 624 F.2d 1342, 1362 (5th Cir.1980) (supplier of avionics equipment to companies that install systems in aircraft lacks standing to maintain action alleging antitrust violations in aircraft outfitting industry); *Volasco Prods. Co. v. Lloyd A. Fry Roofing Co.*, 308 F.2d 383, 394–95 (6th Cir.1962) (supplier of raw materials to asphalt manufacturer denied standing in suit alleging anticompetitive activity in the market for asphalt roofing products). Therefore, according to Nielsen, IRI lacks standing under Areeda's formulation. In support of its position, Nielsen points out that there are several steps both before and after the data-processing step that are performed by the foreign affiliates alone.

Thus, the question of standing in this case depends on which analogy one accepts. On the one hand, there is compelling evidence from Nielsen's internal documents that IRI and Nielsen "are competitors in every relevant economic sense." II Areeda et al., *supra*, ¶ 348f1, at 404. On the other hand, Nielsen points out that the relationship between IRI and its affiliates is structured such that the fees paid by the affiliates for IRI's data reports constitute only 5 to 11% of the affiliates' total costs—lending plausibility to the characterization of IRI as a mere supplier. The question is which view better reflects the economic reality of this particular market. This Court is foreclosed from addressing this important question, however, because the requirements for entering partial final judgment under Rule 54(b) have not been met.

## II. Rule 54(b) Certification

■■■ For a proper entry of partial final judgment under Rule 54(b), three requirements must be satisfied:

(1) [M]ultiple *claims* or multiple *parties* must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make "an express determination that there is no just reason for delay" and expressly direct the clerk to enter judgment.

*Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir.1992); *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997). Because "[f]actors (1) and (2) address the issue of whether rule 54(b) applies at all to the circumstances of the case," they are reviewed *de novo. Ginett,* 962 F.2d at 1091–92. "Factor (3), on the other hand, is addressed to the ultimate decision to direct the entry of judgment; given the permissive nature of rule 54(b) ..., this decision is left to the sound judicial discretion of the district court and is to be exercised in the interest of sound judicial administration." *Id.* at 1092 (quotation marks and citation omitted).

■■■ The problem in this case is factor (2)—finality.[1] A court's disposition of a claim is final if it " 'ends the litigation [of that claim] on the merits and leaves nothing for the court to do but execute the judgment' entered on that claim." *Ginett,* 962 F.2d at 1092 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (alteration in original). "If the district court enters judgment on something less than a final disposition of an entire claim, the Rule 54(b) judgment is improper, and the

---

1. There is no question that factor (1) is satisfied in this case, as there are "multiple claims." Meanwhile, we have no cause to evaluate the district court's exercise of discretion under factor (3) because the certification fails under factor (2).

court of appeals is without jurisdiction to hear the appeal. Such a non-final ruling is an inherently interlocutory order that may not be made appealable under Rule 54(b)." 10 James Wm. Moore et al., *Moore's Federal Practice* § 54.22[2][a][i], at 54–43 (3d ed.1998). Such a ruling may not be certified "regardless of whether the district court makes the requisite express determination that there is no just cause for delay." 19 *id.* § 202.06[2], at 202–23. This category of "non-final ruling" includes "an order granting or denying summary judgment that only partially adjudicates the claim," 10 *id.* § 54.22[2][a][i], at 54–46, or "an order dismissing only a portion of a claim," *id.* at 54–47. *See Acha v. Beame*, 570 F.2d 57, 62 (2d Cir.1978) (citing to Moore for the proposition that "partial or interlocutory adjudication of a claim cannot properly be certified").

In the instant case, Nielsen argues that the district court's grant of partial summary judgment on the standing issue did not dispose of any entire "claim" asserted by IRI, as the court did not identify which particular geographic markets were included in its dismissal. We agree. IRI's complaint asserts claims with respect to some thirty foreign markets, and it remains to be seen which of these was dismissed by the order.

IRI argues that the district court's order does specify which claims have been resolved and which remain for decision. According to IRI, "[t]he District Court specifically identified France, Germany, Great Britain, Italy, the Netherlands and Sweden as those markets in which 'IRI participate[d] in offering retail tracking services through [such] subsidiaries and joint ventures.'" As for the other twenty-four foreign markets, IRI contends that these are subsumed by the district court's statement that it was not ruling "on the extent to which IRI can recover for lost revenues in particular foreign or domestic markets it prepared to or attempted to enter *itself*, but from which it claims it was excluded.... *Such claims were not excluded by the Order.*" *Information Resources*, 127 F.Supp.2d at 416 (emphasis added). Thus, IRI argues, the district court cleanly delineated which claims were dismissed by the order—those related to the six above-mentioned European countries.

IRI's reading of the district court's language is not fully accurate. True, at one point the court explained, "IRI participates in offering retail tracking services through its subsidiaries and joint ventures in France ..., Germany ..., Great Britain ..., Italy ..., the Netherlands ..., and Sweden." *Id.* at 412. The court continued, however, by explaining that IRI also "has 'strategic partnerships' *or 'relationships'* with companies offering retail tracking services *in a variety of other nations* in which it claims antitrust injury." *Id.* (emphasis added). Later, when setting forth its holding, the court stated: "IRI's claims of injury suffered from defendants' activities in foreign markets where IRI operates through subsidiaries or companies owned by joint ventures, *or 'relationships' with local companies*, are dismissed." *Id.* at 415 (emphasis added). Thus, the district court purported to "dismiss" claims resulting from Nielsen's conduct in "a variety of" unspecified "nations" in which IRI has " 'relationships' with local companies." The district court repeated this language in its Determination and Direction Pursuant to F.R. Civ. P. 54(b) and again in its actual entry of judgment. Contrary to IRI's contentions, this language does not limit the dismissed claims to those relating to conduct in France, Germany, Great Britain, Italy, the Netherlands and Sweden. The exact contours of the district court's ruling are not discernible. As an example of the lack of finality

inherent in this disposition, Nielsen cites Mexico. Because, according to Nielsen, it is disputed whether IRI acted through affiliates in Mexico, it is still unknown whether the district court's decision resolved those claims.

■ We find that the district court's grant of partial summary judgment is not final, because it cannot be said that it "ends the litigation [of these claims] on the merits and leaves nothing for the court to do but execute the judgment." *Kahn v. Chase Manhattan Bank, N.A.*, 91 F.3d 385, 388 (2d Cir.1996) (quotation marks omitted); *cf. Acha*, 570 F.2d at 62 ("It follows that where . . . a partial summary judgment is rendered with respect to only part of the relief sought by the appellants . . . judgment is neither 'final' nor on an entire 'claim.' Accordingly, there can be no certification of such a partial summary judgment pursuant to Rule 54(b)."). There is still work to be done by the district court with respect to the claims included in the Rule 54(b) certification.[2] IRI insists that we may nevertheless hear this appeal, as "any ruling on this legal issue by the [appellate] Court would become the law of the case that would apply to any other markets at issue." Even if we were to agree with this proposition, the same could be said of many interlocutory appeals that are not permitted. This reasoning alone does not suffice to overcome the finality requirements for Rule 54(b) certification.[3]

## CONCLUSION

For the reasons stated, we hold that the entry of partial final judgment under Rule 54(b) was improper. In the absence of a proper final judgment, we lack jurisdiction to entertain this appeal. The appeal is dismissed.

---

2. In issuing our ruling, we do not mean to deter the district court from entering a properly certified partial final judgment once it defines the exact limits of its judgment and the elements of finality under Rule 54(b) have been satisfied.

3. For the same reasons that lead us to find the Rule 54(b) certification of the partial summary judgment invalid, the certification of the district court's denial of leave to amend cannot survive. The lack of finality infects this determination in two ways. First, IRI seeks leave to amend only to the extent that it is denied standing. Second, reviewing the district court's denial of leave to amend would require assessing whether the FTAIA provides the district court with subject matter jurisdiction over the affiliates' Sherman Act claims. Conducting this FTAIA analysis, in turn, would require an examination of the particular overseas conduct giving rise to the affiliates' claims. It is impossible to identify the precise conduct at issue without knowing exactly which countries are involved.