12-5081-cv
Acumen Re Management Corp. v. General Security National Ins. Co.

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

————

August Term, 2013

(Argued:  October 7, 2013                    Decided:  October 3, 2014)

No. 12-5081-cv

————

ACUMEN RE MANAGEMENT CORPORATION,
*Plaintiff-Appellant*,

*v.*

GENERAL SECURITY NATIONAL INSURANCE COMPANY,
*Defendant-Appellee.*

————

B e f o r e :

LYNCH, CHIN, AND CARNEY, *Circuit Judges.*

————

Acumen Re Management Corporation ("Acumen") sued General Security National Insurance Company ("General Security"), seeking damages related to General Security's alleged breach of a reinsurance underwriting agreement.  The United States District Court for the Southern District of New York (George B. Daniels, *Judge*) entered partial summary judgment for General Security, ruling that four of Acumen's five breach-of-contract theories were baseless and that, under all five theories, no more than nominal damages were available to Acumen.  The District Court certified the judgment under Federal Rule of Civil Procedure 54(b) and closed the case.  Acumen appealed, invoking Rule 54(b)

certification as the basis for our Court's jurisdiction.  Because the District Court's certification was improper in that its partial judgment did not address separate "claim[s] for relief," we conclude that we lack jurisdiction to reach the merits of this appeal.  Accordingly, the appeal is DISMISSED.

MATHIEU J. SHAPIRO (Paul H. Aloe, Kudman Trachten Aloe LLP, *on the brief*), Obermayer, Rebmann, Maxwell & Hippel LLP, Philadelphia, Pennsylvania, *for Acumen Re Management Corporation*.

CHRISTOPHER BURGESS KENDE (Elliott Kroll, Arent Fox LLP; Edward Hayum, Cozen O'Connor, *on the brief*), Cozen O'Connor, New York, New York, *for General Security National Insurance Company*.

SUSAN L. CARNEY, *Circuit Judge*:

This case arises from a reinsurer's contractual undertakings to compensate a specialized underwriter.  The underwriter, Acumen Re Management Corporation ("Acumen"), sued the reinsurer, General Security National Insurance Company ("General Security"), for breach of contract, seeking contingent commissions alleged to be due.  The United States District Court for the Southern District of New York (George B. Daniels, *Judge*) entered partial summary judgment for General Security, ruling that four of Acumen's five breach-of-contract theories were baseless and that, under all five theories, no more than nominal damages were available.  The District Court then certified the

2

judgment under Federal Rule of Civil Procedure 54(b), and, notwithstanding the remaining disputed theory, closed the case.

General Security asserts that we lack jurisdiction to entertain Acumen's appeal, arguing that the District Court's certification under Rule 54(b) was improper in that its partial judgment did not address separate "claim[s] for relief." We agree, and conclude that we must dismiss the appeal.

## BACKGROUND[1]

We begin with some details of the dispute. In 1994, Acumen, an underwriter, entered into the "Acumen Re Reinsurance Underwriting Agency Agreement" (the "Underwriting Agreement") with Sorema North America Reinsurance Company ("Sorema"). Pursuant to the Underwriting Agreement, Sorema engaged Acumen to underwrite reinsurance of certain workers' compensation insurance, subject to detailed guidelines. The undertaking concerned "facultative reinsurance," in which Sorema, as a reinsurer, would

---

[1] We state the facts as set forth in the parties' Rule 56.1 statements, noting any material allegations subject to dispute.

assume on a policy-by-policy basis certain portions of risks insured as an initial matter by other companies (the "ceding companies"). [2]

Acumen's role for Sorema was primarily to underwrite—that is, to identify, investigate, evaluate, and price—risks of a type and range that were well defined by the Underwriting Agreement. For each qualifying risk identified by Acumen and accepted by Sorema, Acumen would produce a "certificate" documenting the risk and related undertakings.

The Underwriting Agreement provided that Acumen would receive, as compensation, an eight percent commission on "net written premium received by [Sorema] on . . . certificates bound or written under [the] Agreement." The Underwriting Agreement was supplemented at its inception by a "Contingency Commission Addendum" ("Addendum") providing that Acumen would "be allowed a thirty percent (30%) contingent commission on [Sorema's] share of annual net profits, if any . . . arising from [certificates] bound or written under the [parties' agreement]," subject to further specified terms. The Addendum set out a detailed schedule and method for calculating the contingent commissions, using as factors both the profitability of the underwritten policies and the size of

[2] "Facultative reinsurance is reinsurance that is purchased for a specific risk insured by the cedent." Barry R. Ostrager & Mary Kay Vyskocil, MODERN REINSURANCE LAW & PRACTICE 2-5 (2d ed. 2000) ("Modern Reinsurance Law").

4

certain of Sorema's reserves. Together, these documents (the "Initial Agreement") established the terms on which Sorema would compensate Acumen for its underwriting services

Seven years later, in 2001, Sorema was acquired and became General Security. The following year, General Security and Acumen agreed to end their relationship, in the "Agreement Terminating Acumen Re Reinsurance Underwriting Agency Agreement" ("Termination Agreement"). The Termination Agreement called for General Security to make an immediate payment of $1 million to Acumen in 2001, and, in early 2008, to calculate and pay any contingent commissions due under the Addendum for the prior underwriting years—from the start of 1997 through April 30, 2002.[3] The Termination Agreement also specified certain provisions of the Initial Agreement that would survive the termination. These included General Security's obligation to provide to Acumen quarterly reports on any losses General Security incurred on claims then outstanding. (Collectively, the Initial Agreement and the Termination Agreement will be referred to as the "Agreements.")

---

[3] General Security offered testimony suggesting that the gap in time was necessary to permit the relevant claims to "mature" and become fairly calculable. *See* App'x at 901-02.

After the termination in 2002 and before the final commission payment became due in 2008, General Security commuted certain of its reinsurance certificates, some of which had been underwritten by Acumen.[4] The commutations—which Acumen alleged General Security made without consulting Acumen (thereby breaching the Underwriting Agreement, according to Acumen)—were entered into General Security's accounting system as "paid losses." Acumen alleges that General Security accounted for those losses in its financial statements without distinguishing among losses associated with commuted certificates underwritten by Acumen and those underwritten by other companies. General Security also stopped providing quarterly reports to Acumen after December 2004.

In 2008, when the time came for General Security to calculate the contingent commissions owed to Acumen, it concluded that none were due. Rather, it determined that, in the end, the certificates Acumen underwrote generated losses for General Security in excess of $56.7 million.

---

[4] "Commutation" is "a method of terminating a reinsurer's obligations for past, present, and future claims under specifically en[]umerated reinsurance contracts" and is "usually achieved by the payment of a lump sum by the reinsurer to the cedent in exchange for a complete buy-back of all (or specified) reinsurance contracts." Modern Reinsurance Law, *supra* n.2, at 1-13.

Acumen disputed that conclusion, maintaining that it was owed contingent commissions by General Security, and, later in 2008, it sued. Acumen's complaint framed the claims in two counts, one for breach of contract and a second for breach of the implied covenant of good faith and fair dealing. As relief, it sought principally compensatory and punitive damages. Not long after Acumen filed an amended complaint, General Security moved for partial summary judgment on the issues of liability and punitive damages, as well as on Acumen's claim for attorney's fees. In an order dated February 25, 2010, the District Court dismissed, as duplicative of its breach of contract claim, Acumen's claim for breach of the implied covenant of good faith and fair dealing, but denied as premature General Security's motion on the breach of contract claim itself.[5] The case then proceeded on that breach claim.

In that claim, framed in the complaint simply as "COUNT I - Breach of Contract," Acumen alleged that General Security committed "multiple breaches" of the Agreements by: (1) failing to provide Acumen with quarterly financial reports; (2) unilaterally commuting certificates underwritten by Acumen; (3) failing to consult with Acumen before determining the profit (if any) it realized

---

[5] The court's order also explained that Acumen had voluntarily withdrawn its claims for punitive damages and attorney's fees.

on any of Acumen's certificates; and (4) failing (through poor data management, *inter alia*) to perform a valid calculation of and to pay Acumen's contingent commissions. It did not specify damages attributable to each individual alleged breach. Nor did it specify a particular quantum of damages for the Count as a whole, instead asserting generally that it should receive the contingent commissions allegedly owed under the Agreements.[6]

After the close of discovery, General Security moved again for summary judgment on liability and damages, and Acumen filed its own motion for summary judgment on liability. The District Court granted partial summary judgment in General Security's favor. *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, No. 09 CV 01796 (GBD), 2012 WL 3890128 (S.D.N.Y. Sept. 7, 2012). Treating the complaint's Count I as alleging five separate "claims" for breach, the court concluded as a matter of law that Acumen failed to produce evidence sufficient for a trier of fact to conclude that General Security had breached the

---

[6] Although Acumen asserted that, "at a bare minimum," it was entitled to thirty percent of the approximately $10 million in profits that it alleged General Security made as of December 31, 2004 on the Acumen-generated certificates, it also acknowledged that it did not have access to adequate information to calculate the total amount due as of 2008.

contract in four of the five ways that Acumen alleged.[7] *Id.* at \*5-9, \*12. As to one theory, however—the argument that General Security relied on inaccurate data in calculating the contingent commissions—the court determined that a genuine dispute of material fact precluded an award of summary judgment. *Id.* at \*10-12. Finally, with respect to damages, the court observed that Acumen failed "to go beyond its conclusory, speculative assertions to set forth with reasonable certainty evidence of some demonstrable harm" with respect to *any* of the breach theories. *Id.* at \*11. Thus, the court held that, even if Acumen established at trial that General Security relied on inaccurate data and thereby breached its

---

[7] In particular, the court concluded:

1. <u>Quarterly Reports</u>: Acumen waived its right to receive quarterly reports by never inquiring after them or informing General Security that it wished to receive them. *Acumen*, 2012 WL 3890128, at \*6.
2. <u>Reserves Consultation</u>: General Security had no obligation to consult with Acumen before establishing certain aspects of policies' take-back value when it commuted certificates. *Id.* at \*7. In addition, Acumen did not demonstrate that General Security failed to consult with Acumen regarding its reserves related to calculating the contingent commissions, or that its method of calculation was inadequate or a sham. *Id.*
3. <u>Commutation Loss Allocation</u>: General Security's method of calculating contingent commissions, in which it included commutation losses, did not violate the Agreements. *Id.* at \*8.
4. <u>Contingent Commission Calculation Using Carry Forward Deficit</u>: Under the plain terms of the Agreements, General Security could apply a carry-forward deficit when it calculated contingent commissions due. *Id.* at \*9.

contractual obligations, it would be entitled to recover only nominal damages.[8]

*Id.*

Acumen moved for reconsideration or, alternatively, for entry of a partial judgment under Rule 54(b) as to the dismissed "claims." Because the bulk of its case had been dismissed, Acumen explained as follows in support of its request:

> If Acumen loses on the appeal of the remainder of its claims, it is unlikely to ask for a trial limited to nominal damages. If Acumen prevails, a far larger trial will be necessary. Either way, the limited trial on one sliver of the claim, for nominal damages, would have been a waste of time for the Court and all parties.

Mot. for Recons. or Rule 54(b) Jgmt. at 23.

The District Court denied Acumen's motion for reconsideration, but certified its partial summary judgment order as a "final judgment for appeal" under Rule 54(b) and then, without further explanation, directed the Clerk of Court to close the case. *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, No. 09-CV-01796 (GBD), 2012 WL 6053936, at *3 (S.D.N.Y. Dec. 4, 2012). In its order, the court explained its view that the prerequisites of Rule 54(b) were satisfied because the order resolved "four of the five grounds in support of [Acumen's]

---

[8] Under New York law, nominal damages may be awarded to a party who has shown breach of contract, even in the absence of evidence of a related loss. *See, e.g.*, *Hirsch Elec. Co. v. Cmty. Servs., Inc.*, 145 A.D.2d 603, 605 (N.Y. App. Div. 1988).

claims" and "determined liability on all of Acumen's claims for compensatory damages." *Id.* at *2. Finally, the court concluded that there was no just reason for delay, because "resolving the issues finally decided in the [summary judgment order] will likely avoid a costly, duplicative trial (or the need for any trial at all)." *Id.* Judgment was entered and the Clerk of Court closed the case, notwithstanding the still-unresolved theory of breach related to poor data quality.

## DISCUSSION

Our jurisdiction over this appeal is "bounded by 28 U.S.C. § 1291, which empowers us to hear only 'appeals from . . . final decisions' of the federal district courts." *United States ex rel. Polansky v. Pfizer, Inc.*, -- F.3d --, 2014 WL 3844149, at *2 (2d Cir. Aug. 6, 2014) (internal citation omitted). General Security argues that we lack jurisdiction because the order appealed from is not final as to any single "claim." Acumen responds that the District Court appropriately certified its rejection of four of Acumen's five theories of breach under Rule 54(b), thus rendering that ruling a "final judgment" for jurisdictional purposes. Acumen maintains that the theories of breach currently on appeal implicate factual and legal issues that are independent of the unresolved data-quality breach theory,

11

and the different theories are therefore distinct "claims" as required for certification under Rule 54(b).[9] *See, e.g.*, *Schwartz v. Eaton*, 264 F.2d 195, 196 (2d Cir. 1959) (noting that Rule 54(b) "is applicable by its terms only to separate and distinct claims.").[10]

General Security's challenge to our jurisdiction is well founded. For the reasons described below, we conclude that Acumen's five theories of breach are not separate and distinct but are based on a single aggregate of operative facts and thus form a single claim. Accordingly, the District Court's ruling was not

---

[9] Rule 54(b) provides in full:

> Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

[10] Acumen also argues that the District Court's 2010 order, dismissing as duplicative Acumen's claim for breach of the duty of good faith and fair dealing, has merged with the Rule 54(b) judgment and is properly on appeal before this Court. The District Court did not certify the 2010 order for immediate appeal, however, and, because certification under Rule 54(b) was improper in any event (for the reasons discussed *infra*), the merger issue is now moot.

amenable to certification under Rule 54(b), and we lack jurisdiction over this appeal.[11]

The parties do not dispute that the District Court's judgment was partial—that is, that the data-quality issue survived its entry.[12] We therefore have jurisdiction over this appeal, if at all, only by operation of a proper Rule 54(b) certification. That Rule, "in conception, is an application of, not an exception to, the statutory instruction that . . . appeals generally must abide final decision." *Tolson v. United States*, 732 F.2d 998, 1000 (D.C. Cir. 1984). Rule 54(b) authorizes entry of a partial final judgment "as to one or more, but fewer than all, claims or parties" only when three requirements have been satisfied: (1) there are multiple claims or parties; (2) at least one claim or the rights and liabilities of at least one party has been finally determined; and (3) the court makes an "express[]

---

[11] As an initial matter, we briefly observe that our jurisdiction on appeal is sufficient at least to support this opinion, which is designed to clarify our jurisdiction. *See Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir. 2001); *Oneida Indian Nation v. New York*, 732 F.2d 259, 261 (2d Cir. 1984).

[12] That is an appropriate concession. Although the District Court directed the Clerk of Court to close the case, and proceedings below have ceased, neither the District Court's direction that the case be closed nor the case's subsequent closure transformed the judgment from interlocutory to final or from partial to complete. This is because a district court's direction to the clerk to enter judgment dismissing the complaint "cannot cloak what is in practice a partial judgment." *Polansky*, -- F.3d --, 2014 WL 3844149, at *4. Indeed, "the label used to describe the judicial demand is not controlling, meaning we analyze the substance of the district court's decision, not its label or form." *Id.* (internal quotation marks omitted). Because the District Court expressly held that the data-quality theory survived, we cannot comfortably conclude that the District Court resolved all the issues before it.

determin[ation] that there is no just reason for delay."  Fed. R. Civ. P. 54(b); *see*

*Grand River Enters. Six Nations Ltd. v. Pryor*, 425 F.3d 158, 164-65 (2d Cir. 2005).

In this case, the third requirement for Rule 54(b) certification appears to be satisfied, since the District Court expressly determined that there was "no just reason for delay."[13]  *See Acumen*, 2012 WL 6053936, at *3.  The parties dispute, however, whether the District Court's judgment satisfied the first two criteria for certification.  That is to say, they disagree as to whether the data-quality issue that survived the judgment amounts to a "claim" under Rule 54(b) that is adequately distinct from the issues before us on appeal, or rather is part of a single "claim" that the District Court disposed of only in part.  If Acumen's five theories of breach constitute a single claim, then neither the first nor the second of Rule 54(b)'s requirements has been satisfied here:  The action would involve only one claim and one party (rather than "more than one claim for relief" or "multiple parties"), and no single claim will have been finally determined.  Accordingly, only if the District Court adjudicated a claim distinct from the data-

---

[13] This determination that there is no just reason for delay is left to the sound discretion of the district court.  *See Info. Res., Inc. v. Dun & Bradstreet Corp.*, 294 F.3d 447, 451 (2d Cir. 2002).  Because we conclude that the first two requirements of Rule 54(b) have not been met, we need not consider whether the District Court's express determination on this score was made in error.

14

quality theory remaining below do we have jurisdiction over this appeal. *See Info. Res., Inc. v. Dun & Bradstreet Corp.*, 294 F.3d 447, 452 (2d Cir. 2002) ("[A]n order dismissing only a portion of a claim" is a "non-final ruling" and "[s]uch a ruling may not be certified.").

We therefore turn to the task of determining whether the different theories of recovery presented by Acumen are distinct claims for the purposes of Rule 54(b),[14] a task as to which "our scope of review is broad." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 417 (2d Cir. 1989). As one prominent treatise observes, however, "The line between deciding one of several claims and deciding only part of a single claim is sometimes very obscure." 10 Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 2657, at 68 (3d ed. 1998).

Over the years, our Court has articulated several standards to aid in determining whether claims are separate for Rule 54(b) purposes. We have defined a claim as "the aggregate of operative facts which give rise to a right enforceable in the courts." *Gottesman v. Gen. Motors Corp.*, 401 F.2d 510, 512 (2d Cir. 1968) (quoting *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir.

---

[14] We examine *de novo* whether the first two requirements of Rule 54(b)—whether multiple claims or multiple parties are present and whether at least one claim has been finally decided—have been satisfied. *See Info. Res,* 294 F.3d at 451.

15

1943)).  In other circumstances, we have explained that for Rule 54(b) purposes whether multiple claims are present turns on whether the issues are "separate and distinct." *Hudson River Sloop*, 891 F.2d at 418.  Only "[w]hen the certified claims are based upon factual and legal questions that are distinct from those questions remaining before the trial court" may the certified claims "be considered separate claims under Rule 54(b)."  *Id.*  We examine the relationships among a plaintiff's theories of recovery to determine whether they "lend themselves to review as single units, or whether they are so interrelated and dependent upon each other as to be one indivisible whole."  *Id*.

We have also suggested that the existence of multiple claims turns on "whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced."  *Rieser v. Baltimore & Ohio R.R. Co.*, 224 F.2d 198, 199 (2d Cir. 1955).  Commentators have interpreted this test to mean that "when a claimant presents a number of legal theories, but will be permitted to recover only on one of them," there exists only a single claim for relief.  Wright, Miller & Kane, *supra*, § 2657.

Our past decisions provide guidance in applying these standards.  In *Gottesman*, we held that allegations of malfeasance involving the purchase of

16

different products presented distinct claims. 401 F.2d at 512. There, the plaintiff shareholders of General Motors alleged (in a derivative action) that a defendant had unlawfully dominated and controlled General Motors in the purchase of various products ranging from automotive fabrics to Freon refrigerant. Each asserted cause of action concerned unlawful domination and control with respect to a particular product. *Id.* at 511. Observing that "[e]ach product involves separate markets and commercial considerations," and "[d]ifferent exhibits, proof and witnesses will be necessary; different sets of operative facts will determine the results," we concluded that the allegations of misconduct regarding different products presented distinct claims. *Id.* at 512.

In *Hudson River Sloop*, this Court similarly concluded that a suit aimed at preventing the United States Navy from stationing ships at Staten Island presented multiple claims. 891 F.2d at 418. The plaintiffs there alleged that the Navy had violated two federal statutes by, among other things, (1) failing adequately to consider the environmental impact of the construction necessary to station the ships, as well as the environmental impact of conventional weapons on board the ships; and (2) failing adequately to disclose or consider the impact of nuclear weapons that might have been on board the ships. The district court

17

granted partial summary judgment on the claims involving nuclear weapons and certified those claims under Rule 54(b), holding that any inquiry into the presence of nuclear weapons on the ships (which the Navy refused to confirm) was barred by the national security doctrine. *Id.* at 416-17. Our Court upheld the Rule 54(b) certification, emphasizing that none of the claims remaining before the district court involved the deployment of nuclear weapons or classified information. Thus, although "the claims on appeal stem[med] from the same general objection," those claims involved "a unique factual scenario—deployment of nuclear weapons—and raise[d] legal issues wholly distinct from those that remain for trial." *Id*. at 418. Accordingly, the claims on appeal were "separate and distinct" from those remaining before the district court. *Id.*

By contrast, *Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339 (2d Cir. 1963), held that a plaintiff asserting three theories of recovery—all arising from a defendant's alleged breach of a single oral agreement—did not present multiple claims. *Id.* at 341. In *Backus*, the plaintiff presented three "causes of action" against the president of a corporation: breach of an oral agreement; breach of a promise by the president to secure the consent of his corporation's stockholders and directors to the oral agreement; and misrepresentation by the

18

president of his ability to obtain that consent.  The district court granted summary judgment on the first two causes of action, and certified the judgment under Rule 54(b).  *Id.* at 340.  Our Court held that the plaintiff's three "causes of action" were not distinct claims.  Instead, "[a]ll of the facts on which plaintiff relies constitute[d] but a single transaction composed of a closely related series of occurrences," *id.* at 341 (quoting *Schwartz*, 264 F.2d at 196), and "the complaint presented merely three different theories of recovery against [the defendant] for his failure to carry out the alleged agreement," *id.*

Similarly, in *Seaboard Machinery Corp. v. Seaboard Machinery Corp.*, 267 F.2d 178 (2d Cir. 1959), we declined to uphold a district court's Rule 54(b) certification when all the certified "claims" derived from a single contract and involved the same factual underpinnings.  *Id.* at 179.  We explained that "[a]ll the counts—and the counterclaim as well—arise out of a single contract . . . . The plaintiffs claim fraud and breach of warranty in their purchase, and each count sets forth some aspect of this over-all claim."  *Id.*  Although the plaintiff set out a separate quantum of damages for each count of the complaint, that was not enough to transform the various theories of recovery into distinct claims.  *Id.* at 180.

19

In this case, what remains before the District Court is whether General Security breached the Agreements by using flawed data to determine whether it owed Acumen any contingent commissions.  Resolution of that issue is tied up with the merits issues currently on appeal, all of which ultimately bear on the question whether General Security's calculations were correct.  For example, whether General Security was entitled to use carry-forward deficits in its calculation (an issue certified for appeal) dovetails with whether it used fundamentally flawed data (the issue that remains below).  Similarly, the soundness of General Security's method for calculating contingent commissions—in which General Security included commutation losses— depends in part upon the quality of the data used in calculating those commissions.  Contrary to the District Court's view, Acumen's various theories of breach are not discrete and segregable; rather, they are only parts of a closely interwoven whole.

Nor do Acumen's "underlying factual bases for recovery state a number of different claims which could have been separately enforced."  *Rieser*, 224 F.2d at 199.  Acumen presented its five theories as a single count (for breach of contract) and offered one measure of damages (contingent commissions due under the

20

Agreements). Acumen alleges five ways in which General Security breached the Agreements, but, combined, those failures are alleged to have caused only a single harm: depriving Acumen of contingent commissions that might have been due under the Addendum. If Acumen wins on any of its theories, it is entitled to the same quantum of damages, and it does not matter whether it succeeds on one theory or five.

Here, Acumen's five theories of breach do not qualify as separate claims under any of the tests enunciated by our Circuit. Acumen's theories merely allege various ways in which General Security breached the Agreements— agreements that are themselves so united and mutually referential as not to admit of separate "claims." Far from being "separate and distinct," Acumen's theories are rather "so interrelated and dependent upon each other as to be one indivisible whole." *Hudson River Sloop*, 891 F.2d at 418. They arise out of "a single transaction composed of a closely related series of occurrences," *Backus*, 317 F.2d at 341, and are not likely to be proved by different witnesses and exhibits, *see Gottesman*, 401 F.2d at 512. Moreover, accepting certification would disserve the "purposes and policies" behind Rule 54(b), namely the desire to

"avoid redundant review of multiple appeals based on the same underlying facts and similar issues of law." *Hudson River Sloop*, 891 F.2d at 418.[15]

## CONCLUSION

For the foregoing reasons, we hold that the District Court's entry of the Rule 54(b) order and judgment was in error, and, in the absence of a final judgment on a claim or an otherwise reviewable order, we lack jurisdiction over this appeal.  The appeal is DISMISSED.

---

[15] Rule 54(b) certifications of judgments as to fewer than all claims resemble, but are distinct from, review of interlocutory decisions made possible under 28 U.S.C. § 1292(b), and the "[t]wo procedural mechanisms . . . are sometimes confused." *Tolson*, 732 F.2d at 1000.  In contrast to Rule 54(b)'s focus on final orders as to one of several parties or whole claims, Section 1292(b) permits our Court to exercise appellate jurisdiction over certain appeals from *non-final* orders when the district court advises, and the court of appeals agrees, that the district court's decision involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Acumen did not move for certification under Section 1292(b), however, and the District Court did not certify its summary judgment order under that statute.